# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARK GEIER and DAVID GEIER<br>14 Rodgate Court<br>Silver Spring, Maryland 20905,<br><br>    Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN<br>  SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>and<br><br>DR. SARAH K. PARKER and DR. JAMES TODD<br>Children's Hospital – Department of Pediatrics<br>1056 East 19th Avenue<br>Denver, CO 80218<br><br>and<br><br>DR. BENJAMIN SCHWARTZ and<br>DR. LARRY PICKERING<br>National Vaccine Program Office<br>Department of Health and Human Services<br>200 Independence Avenue, SW – Room 725<br>Washington, DC 20201<br><br>and<br><br>THE AMERICAN ACADEMY OF PEDIATRICS<br>601 13th Street, NW<br>Suite 400- North<br>Washington, DC 20005,<br><br>    Defendants. | Case No. 1:05CV01749<br>Judge Richard W. Roberts |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS PARKER AND TODD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## INTRODUCTION

Dr. Sarah Parker and Dr. James Todd are physicians who live and practice medicine in Denver, Colorado. Neither resides in the District of Columbia, practices medicine in the District of Columbia, or conducts any business in the District of Columbia.

Plaintiffs Mark Geier and David Geier sued Dr. Parker and Dr. Todd in the United States District Court for the District of Columbia. The suit arises from an article that Dr. Parker and Dr. Todd wrote, with two other physicians, about a significant health issue affecting practicing pediatricians, namely, whether vaccines containing a mercury-based preservative cause or contribute to autism. The article reviewed the body of medical literature discussing this connection. In doing so, the authors commented that it was "unclear" how the Geiers arrived at some of their conclusions because the Centers for Disease Control do not release vaccine manufacturer-specific data in their Biological Surveillance Summaries.[1] The Geiers claim that the authors defamed them with this statement and impaired their ongoing business of serving as expert witnesses in vaccine-related litigation. At least as to Dr. Parker and Dr. Todd, the Court need not consider the merits of these claims because the Geiers have not alleged any facts that would create personal jurisdiction.

---

[1] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 796 (September 2004)

**LEGAL STANDARD**

A court may dismiss a complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). In diversity cases, such as this one, a federal court must look to the jurisdictional law of the forum to determine whether it has personal jurisdiction over a non-resident defendant. *LaPointe v. Van Note*, 2004 U.S. Dist. LEXIS 27691, at *6-7 (D.D.C. Nov. 9, 2004).[2] Under District of Columbia law, personal jurisdiction can be satisfied by demonstrating that the court has general jurisdiction over the defendants, pursuant to D.C. Code § 13-422, or specific jurisdiction, pursuant to the District of Columbia's long arm state, D.C. Code § 13-423. *See LaPointe*, 2004 U.S. Dist. LEXIS 27691, at *7. The court must also determine whether a finding of specific jurisdiction satisfies the constitutional due process requirements. *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

The Geiers bear the "burden of establishing a factual basis for the court's exercise of personal jurisdiction" over Dr. Parker and Dr. Todd. *LaPointe*, 2004 U.S. Dist. LEXIS 27691, at *7 (internal quotations omitted). To meet this burden, the Geiers must allege specific facts establishing personal jurisdiction, and they may not rely upon conclusory allegations. *LaPointe*, 2004 U.S. Dist. LEXIS 27691, at * 5. Moreover, even if the Court has jurisdiction over another defendant, it "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any

---

[2] *Lapointe* is a 2004 decision from another division of the United States District Court for the District of Columbia. Because *Lapointe* considered whether personal jurisdiction existed as a result of a non-resident's publication of an allegedly defamatory article, it may assist the Court in addressing whether it may assert personal jurisdiction over Dr. Parker and Dr. Todd. For the Court's ease of reference, *Lapointe* is attached as Exhibit B.

individual defendant." *LaPointe*, 2004 U.S. Dist. LEXIS 27691, at * 5 (internal quotation omitted). In particular, when the United States Court of Appeals for the District of Columbia considered whether personal jurisdiction existed over an author who submitted an article to a national publication, it drew a distinction between the author and the publisher. *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1300 (D.C. Cir. 1996). Specifically, it found that "[t]he writer is not the publisher," and their contacts "must be assessed separately." *McFarlane*, 74 P.3d at 1300.

## FACTUAL BACKGROUND

### I. The Authors Wrote an Article Critical of the Geiers' Research

Dr. Parker and Dr. Todd, along with two additional physicians who are also named as defendants in this lawsuit, wrote an article, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, that was ultimately published in PEDIATRICS. The article addressed the significant public health issue of whether it is safe to use thimerosal as a vaccine preservative. Because thimerosal contains a form of mercury, which is a neurotoxin, some scientists claim that vaccines that contain thimerosal have the potential to cause autistic spectrum disorders.[3] Because the Food and Drug Administration asked manufacturers to remove thimerosal from vaccines as a precautionary measure, it no longer used in most vaccines given in the United States.[4]

---

[3]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 793 (September 2004).

[4]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 794 (September 2004).

Nonetheless, thimerosal is still used in vaccines administered in other countries and many parents in the United States question the safety of vaccines.[5] Unfounded concerns about vaccine safety can result in decreases in vaccination rates, contribute to the outbreak of diseases, and result in the misallocation of limited financial and research resources.[6] To answer ongoing questions about the relationship between thimerosal and neurodevelopmental disorders, the authors critically evaluated the existing body of medical literature on this subject. In particular, they assessed "the design, methods, analysis, and conclusion of each original research publication" that addressed whether thimerosal caused or contributed to autism.[7]

The Geiers authored five of the articles suggesting a causal link between thimerosal and neurodevelopmental disorders.[8] The Geiers based their analysis upon reports that physicians and others make to the Vaccine Adverse Events Reporting System ("VAERS").[9] Even though the Centers for Disease Control monitor the VAERS system, it is not well-regarded as a source of scientific data for a number of reasons, including that reporting for autism is voluntary, the diagnoses are not confirmed, and that

---

[5]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 794 (September 2004).

[6]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 802 (September 2004).

[7]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 794 (September 2004).

[8]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 795, 796 (September 2004).

[9]   See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 795 (September 2004).

underreporting often occurs when the diagnosis is for a condition that is not actionable under vaccine compensation programs.[10] In addition, because the Geiers claimed to have derived their conclusions from manufacturer-specific vaccine data, the authors questioned where the Geiers obtained their data because the Centers for Disease Control do not release that information.[11] The authors did not contact the Geiers or any other researchers because their goal was to "evaluate data available in the original publications," but they attempted to "validate data sources used in the reviewed publications when the data sources were available publicly."[12]

The article contrasted the Geiers' methodology against other studies that found no link between thimerosal and autism. The authors observed that the studies that did not find an association between thimerosal and autism, "despite some limitations, generally were well designed and appropriately analyzed."[13] Overall, from their review of the many studies, the authors found "no association between thimerosal-containing vaccines and [neurodevelopment disorders], including autism."[14] Because funding for autism research is limited and the parents of autistic children deserve to see those scarce finances

---

[10] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 795 (September 2004).

[11] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 796 (September 2004).

[12] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 794 (September 2004).

[13] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 801 (September 2004).

[14] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 802 (September 2004).

6

directed to where they will do the most good, the authors suggested that the scientific community's "efforts may be substantially more productive if they are redirected to other hypotheses."[15]

## II. The Geiers' Lawsuit

The Geiers' claim to be "experts on the adverse reactions to vaccines."[16] As experts, the Geiers regularly "serve as expert witnesses and consultants in cases involving adverse reactions . . . and receive compensation for these services…".[17] They admit that they "dedicate a substantial amount of their time and resources to their role as expert witnesses."[18] Dr. Mark Geier has "appeared in approximately 100 cases and has participated in the review of approximately 1,000 claims."[19] The Geiers depend upon the compensation that they receive as experts,[20] and they have asked the Court to award them hundreds of thousands of dollars in potentially lost revenues as experts witnesses.[21]

In response to the article criticizing their research, the Geiers brought suit against each of the authors and claimed that the article has interfered with their ability to testify

---

[15] See Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 802 (September 2004).

[16] Complaint at ¶14.

[17] Complaint at ¶18.

[18] Complaint at ¶20.

[19] Complaint at ¶20.

[20] Complaint at ¶21.

[21] Complaint at Prayer for Relief, ¶¶D-H.

7

as experts.[22]  In particular, the Geiers have seized upon a single paragraph of the article, which contained the following seven sentences:

- Substantial questions regarding the accuracy of the denominator data for the incidence calculation also exists.

- The denominator requires the total number of children who received thimerosal-containing DTaP (exposed) and the total number of children who received thimerosal-free DTaP (unexposed).

- The authors indicated the source of these data as the "Biological Surveillance Summaries of the CDC."

- <u>However, CDC reports only aggregated doses distributed for DTaP and other vaccines and provides no manufacturer-specific data.</u>

- <u>It is unclear how the authors estimated manufacturer-specific data because, on the basis of agreements with the manufacturers, CDC does not release these data.</u>

- No source is cited in the publication.

- The authors provided no details on how total DTaP doses distributed were translated into number of children vaccinated with specific thimerosal-containing or thimerosal-free vaccines, which is particularly problematic for a vaccine administered in a 5-dose schedule over a 4-to-5 year period.[23]

Despite the fact that the authors stated only that it was "unclear how the [Geiers] estimated manufacturer-specific data," the lawsuit claims that the article "defamed the Geiers by suggesting that the Geiers falsified their key data and therefore the results based upon analysis of that data."[24]  No such words appear in the article, and the Court

---

[22]   Complaint at ¶68.

[23]   Complaint at ¶47 (emphasis in original) (citing Exhibit A, *Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data*, Vol. 114 PEDIATRICS 793, 796 (September 2004)).

[24]   Complaint at ¶65.

8

could legitimately question whether the Geiers' pleadings describe a legally actionable statement from Dr. Parker or Dr. Todd.

> III.   *Dr. Parker and Dr. Todd Have No Significant Contacts with the District of Columbia*

At this time, the issue is whether the Court may exercise personal jurisdiction over Dr. Parker or Dr. Todd. Under the Supreme Court's well-established jurisprudence, a court may not exercise personal jurisdiction unless there are sufficient contacts between a defendant's conduct and the forum that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The plaintiff must also demonstrate that exercising jurisdiction over a defendant would not "offend the traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. at 316. As the Court considers these questions, the evidence before it will be:

- Dr. Parker and Dr. Todd live in Denver, Colorado.[25]

- Dr. Parker and Dr. Todd are faculty members of the University of Colorado Health Sciences Center and physicians practicing medicine at The Children's Hospital in Denver, Colorado.[26]

- Dr. Parker and Dr. Todd do not practice medicine in the District of Columbia and, to their knowledge, have treated no patients who reside in the District of Columbia.[27]

- Dr. Parker and Dr. Todd do not have privileges to practice at any hospital in the District of Columbia.[28]

---

[25]   Exhibit C Declaration of Dr. Sarah Parker at ¶1; Exhibit D Declaration of Dr. James Todd at ¶1.

[26]   Exhibit C Declaration of Dr. Sarah Parker at ¶1; Exhibit D Declaration of Dr. James Todd at ¶1.

[27]   Exhibit C Declaration of Dr. Sarah Parker at ¶15; Exhibit D Declaration of Dr. James Todd at ¶10.

- Dr. Parker and Dr. Todd performed their research for the article entirely in the State of Colorado.[29]

- Dr. Parker and Dr. Todd did not collaborate with any person who resides or works in the District of Columbia while writing the article.[30] Their co-authors are physicians who reside and work at the Centers for Disease Control in Atlanta, Georgia.[31]

- Dr. Parker submitted the article to the journal PEDIATRICS through its website.[32]

- The American Academy of Pediatrics publishes PEDIATRICS from its Publisher's Office in Elk Grove, Illinois.[33]

- Dr. Parker communicated with Dr. Ralph Feigin during the editorial process. Dr. Feigin practices medicine and resides in Houston, Texas.[34]

- Dr. Parker and Dr. Todd did not have any contact with the American Academy of Pediatrics' office in the District of Columbia about the drafting of the article.[35]

- Neither Dr. Parker nor Dr. Todd, had any contact with any person in the District of Columbia about the drafting of the article.[36]

- Neither Dr. Parker nor Dr. Todd received any compensation, royalties, or financial benefit from writing the article.[37] In fact, Dr. Parker researched and prepared the article primarily at nights and over weekends.[38]

---

[28]  Exhibit C Declaration of Dr. Sarah Parker at ¶15; Exhibit D Declaration of Dr. James Todd at ¶10.

[29]  Exhibit C Declaration of Dr. Sarah Parker at ¶7; Exhibit D Declaration of Dr. James Todd at ¶5.

[30]  Exhibit C Declaration of Dr. Sarah Parker at ¶8; Exhibit D Declaration of Dr. James Todd at ¶5.

[31]  Exhibit C Declaration of Dr. Sarah Parker at ¶8; Exhibit D Declaration of Dr. James Todd at ¶5.

[32]  Exhibit C Declaration of Dr. Sarah Parker at ¶11.

[33]  Exhibit E Website from American Academy of Pediatrics.

[34]  Exhibit C Declaration of Dr. Sarah Parker at ¶12.

[35]  Exhibit C Declaration of Dr. Sarah Parker at ¶10; Exhibit D Declaration of Dr. James Todd at ¶7.

[36]  Exhibit C Declaration of Dr. Sarah Parker at ¶9; Exhibit D Declaration of Dr. James Todd at ¶6.

- Neither Dr. Parker nor Dr. Todd has a place of business in the District of Columbia.[39]

- Neither Dr. Parker nor Dr. Todd has an address, post office box, or telephone number in the District of Columbia.[40]

- Neither Dr. Parker nor Dr. Todd derives any revenue for services performed in the District of Columbia.[41]

## ARGUMENT

*I.    Prior Decisions Provide an Analytical Framework for the Court to Assess Questions of Personal Jurisdiction*

This case raises no novel jurisdiction issues. Instead, a series of decisions from the United States Court of Appeals for the District of Columbia and the United States District Court for the District of Columbia address whether a court may exercise personal jurisdiction after an author submits an allegedly defamatory article to a national publication. Those decisions are: *Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217 (D.C. Cir. 1986); *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1300 (D.C. Cir. 1996); and *LaPointe v. Van Note*, 2004 U.S. Dist. LEXIS 27691 (D.D.C. Nov. 9, 2004). Although the facts of these cases are different, each of them points to the same conclusion in this case, which is that *"writing an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting

---

[37] Exhibit C Declaration of Dr. Sarah Parker at ¶13; Exhibit D Declaration of Dr. James Todd at ¶8.

[38] Exhibit C Declaration of Dr. Sarah Parker at ¶7.

[39] Exhibit C Declaration of Dr. Sarah Parker at ¶15; Exhibit D Declaration of Dr. James Todd at ¶10.

[40] Exhibit C Declaration of Dr. Sarah Parker at ¶16; Exhibit D Declaration of Dr. James Todd at ¶11

[41] Exhibit C Declaration of Dr. Sarah Parker at ¶15; Exhibit D Declaration of Dr. James Todd at ¶10

business, or engaging in a persistent course of conduct, <u>within</u> the District." *McFarlane*, 74 F.3d at 1300 (emphasis in original).

    II.    *General Jurisdiction Does Not Exist Over Dr. Parker or Dr. Todd*

The first way the Court might assert personal jurisdiction over Dr. Parker or Dr. Todd is through the District of Columbia's general jurisdiction statute. D.C. Code §13-422 states, "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."

The Geiers have not alleged any facts that bring Dr. Parker or Dr. Todd within the ambit of the general jurisdiction statute. Neither lives, works, or derives any revenues from the District of Columbia. Instead, each is a faculty member of the University of Colorado Health Sciences Center and a physician practicing at The Children's Hospital in Denver, Colorado. Accordingly, this Court lacks jurisdiction over Defendants Parker and Todd under D.C. Code §13-422.

    III.    *The District of Columbia's Long-Arm Statute Does Not Create Personal Jurisdiction Over Dr. Parker or Dr. Todd*

The question then becomes whether the Court may exercise personal jurisdiction through the District of Columbia's long-arm statute. D.C. Code §13-423 provides:

> (a)    A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
>     (1)    transacting any business in the District of Columbia;
>     …

    (3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

    (4)    causing tortious injury in the District of Columbia by act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . .

The statute further provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code §13-423(b).

    A.    <u>Dr. Parker and Dr. Todd Do Not Transact Business in the District of Columbia</u>

D.C. Code §13-423(a)(1), which allows for personal jurisdiction when a defendant transacts business in the District of Columbia, does not allow the Court to assert personal jurisdiction over Dr. Parker or Dr. Todd. Courts in the District of Columbia have generally viewed §13-423(a)(1) as coextensive with the U.S. Constitution's due process limit. *LaPointe*, 2004 U.S. Dist. LEXIS 27691, at *10-11. Thus, in order to establish personal jurisdiction, the Geiers must show that Dr. Parker and Dr. Todd engaged in some affirmative act by which they brought themselves within the District of Columbia and established minimum contacts. Without such an affirmative act, exercising personal jurisdiction would "offend the traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (internal quotation omitted).

The Geiers have alleged no facts demonstrating that Dr. Parker or Dr. Todd transact any business in the District of Columbia. Neither physician performed any research or wrote the article in the District of Columbia. Neither physician received any

compensation for writing the article, let alone any compensation from sources in the District of Columbia.  Like the publisher in *LaPointe,* who was not found to have transacted any business in the District of Columbia, Dr. Todd and Dr. Parker have no business addresses, list no phone numbers, and have no bank accounts or other tangible property in the District.  *LaPointe v. Van Note*, 2004 U.S. LEXIS 27691, at *13-14.

Stated another way, Dr. Parker and Dr. Todd have not "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State" such that they could "reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp*, 444 U.S. at 297 (internal quotations omitted).  Where two physicians write an article in Denver, Colorado, collaborate with other physicians in Atlanta, Georgia, submit their article to a peer-reviewed medical journal published in Elk Grove Illinois, work with an editor in Houston, Texas, and ultimately receive no financial benefit of any kind for their efforts, the Geiers may not credibly assert that jurisdiction exist under D.C. Code §13-423(a)(1).

    B.    <u>The Geiers' Claims Against Dr. Parker and Dr. Todd Do Not Arise From Any Tortious Act Committed in the District of Columbia</u>.

The Geiers also fail to establish personal jurisdiction under D.C. Code §13-423(a)(3), which allows jurisdiction when a defendant causes tortious injury in the District of Columbia by an act or omission in the District of Columbia.  This provision allows personal jurisdiction over non-residents only when the tortious injury and an act predicate to it both occur in the District of Columbia.  *Montcrief*, 807 F.2d at 221; *McFarlane*, 74 F.3d at 1300; *LaPointe*, 2004 U.S. Dist. LEXIS 27691 at *18.

Previous plaintiffs have argued that jurisdiction exists under this provision when a non-resident author writes a defamatory article that ultimately causes injury to a resident of the District of Columbia. But such an argument would obliterate the provision's careful distinction between an "act" and an "injury." *McFarlane*, 74 F.3d at 1300. D.C. Code §13-423(a)(3) reflects an intentional choice to separate "acts" from "injuries" and grants jurisdiction over non-residents only when they engage in tortious conduct within the District of Columbia. *Moncrief*, 807 F.2d at 220-221. Although the Congress could have enacted a statute that conferred personal jurisdiction whenever someone claims to have suffered an injury to his reputation or business in the District of Columbia, it chose a more moderate provision. *Moncrief,* 807 F.2d at 220.

Consequently, D.C. Code §13-423(a)(3) could not confer jurisdiction over an author who wrote an allegedly defamatory newspaper article in New York and submitted it to a magazine in New York. *McFarlane*, 74 F.3d at 1300. Nor would the statute allow jurisdiction over a publisher that printed an allegedly defamatory newspaper article in Kentucky, even though the publisher employed a reporter in the District, had twenty-two paid subscribers in the District, and received approximately $3000 per year in revenue from those subscriptions. *Moncrief*, 807 F.2d at 218-219. Underlying these decisions was the fact that a libelous act occurs at the site of publication, not at any location where a person might receive the publication. *Montcrief*, 807 F.2d at 219.

The Geiers do not allege that the article was written or published in the District of Columbia. They fail to allege that Dr. Parker or Dr. Todd engaged in any tortious acts in the District of Columbia. Nor could the Geiers make any such allegations because all of

15

Dr. Parker's and Dr. Todd's research and writing occurred in Colorado. They never even communicated with any individual in the District of Columbia about the article, even though such a communication would not be sufficient to confer personal jurisdiction. *See Margoles v. Johns*, 483 F.2d 1212, 1213 (determining that D.C. Code §13-423(a)(3) did not confer jurisdiction when a newspaper reporter in Wisconsin telephoned a congressman's office in the District of Columbia and maliciously spoke about the plaintiff with false and defamatory words). Simply stated, because the Geiers allege no tortious acts in the District of Columbia, the Court may not exercise personal jurisdiction over Dr. Parker or Dr. Todd under D.C. Code §13-423(a)(3).

    C.    <u>Defendants Parker and Todd are Not Engaged In Any Persistent Course of Conduct in the District of Columbia</u>.

Finally, the Geiers fail to allege any facts that would satisfy D.C. Code §13-423(a)(4), which allows personal jurisdiction where a plaintiff has suffered a tortious injury in District of Columbia at the hands of a defendant who: (1) regularly does business or solicits business in the District of Columbia; (2) engages in any other persistent course of conduct in the District of Columbia; or (3) derives substantial revenue from services rendered in the District of Columbia. In the absence of any such allegations, the Court may not assert personal jurisdiction over Dr. Parker or Dr. Todd.

At the outset, it bears mentioning that the Geiers have not alleged that they suffered any injury in the District of Columbia. To the contrary, both Mark Geier and David Geier are residents of Silver Spring, Maryland.[42] Each of them operates a business

---

[42]     Complaint at ¶¶3, 4.

in Maryland, not the District of Columbia.[43]  *See Crane v. New York Zoological Society*, 894 F.2d 454, 457-58 (D.C. Cir. 1990) (stating that "economic loss resulting from defamation is most likely to be felt in one's place of business whatever the locus of its publication…").  The Geiers claim that venue is appropriate in this Court only because the American Academy of Pediatrics has an office in District of Columbia and the Department of Health and Human Services is located in the District of Columbia.[44]

The Geiers allege no facts indicating that Dr. Parker or Dr. Todd does any business in the District of Columbia, engages in any persistent course of conduct in the District of Columbia, or receives any revenues for services performed in the District of Columbia.  To the contrary, they conduct none of their research in District of Columbia, derive none of their research from data collected or compiled in the District of Columbia, hold no privileges at hospitals in the District of Columbia, and do not treat any patients who reside in the District of Columbia.  While both are members of the American Academy of Pediatrics, neither had any contacts with the Academy's District of Columbia office about the article.

Dr. Parker's and Dr. Todd's contacts with the District of Columbia are hardly the type that would allow the Court to determine that they purposefully availed themselves of the District of Columbia such that they might anticipate being haled into court.  In fact, their contacts with the District are even more tenuous than contacts that the Court of Appeals has already found insufficient under D.C. Code §13-423(a)(4):

---

[43]    Complaint at ¶¶3, 4.

[44]    Complaint at ¶12.

17

> [W]e are left with two articles appearing in Washington-based publications, one in the *Washington Post* (which was written after McFarlane's complaint was filed and is therefore no basis for personal jurisdiction …) and one in the *New Republic*. <u>If "regularly" and "persistent" are to have any meaning, sale of two articles to District-based publications over a career in journalism cannot amount to "regularly" doing business or to a "persistent" course of conduct</u>.

*McFarlane,* 74 F.3d at 1300-1301 (internal citations omitted and emphasis added).

## CONCLUSION

Dr. Parker and Dr. Todd engaged in no tortious conduct in the District of Columbia. They have not engaged in any business in the District of Columbia or received payment for any services rendered in the District of Columbia. Because there are no facts that would allow the Court to assert personal jurisdiction over them, Dr. Parker and Dr. Todd respectfully request this Court to dismiss the Complaint against them pursuant to Fed.R.Civ.P. 12(b)(2).

        Respectfully submitted,

        **ECKERT SEAMANS CHERIN &**
          **MELLOTT, LLC**

        *Erica H. Perkins*
        Edward J. Longosz, II  #368932
        Erica Perkins #484162
        1747 Pennsylvania Ave., N.W., Suite 1200
        Washington, D.C. 20006
        Counsel for Defendants, Parker and Todd

OFFICE OF UNIVERSITY COUNSEL

Patrick T. O'Rourke
Managing Associate University Counsel
Special Assistant Attorney General
University of Colorado
1380 Lawrence Street, Suite 1325
Denver, CO 80204
303-556-4339
FACSIMILE:  303-825-7630
Patrick.Orourke@cudenver.edu
*Attorney for Defendants Parker and Todd*

Case 1:05-cv-01749-TFH     Document 9     Filed 11/01/2005     Page 19 of 20

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing **Memorandum Of Points And Authorities In Support Of Defendants Parker And Todd's Motion To Dismiss For Lack Of Personal Jurisdiction** was served electronically and sent by first-class postage pre-paid mail, this ___ day of October, 2005

        James A. Moody, Esquire
        The Cullen Law Firm, P.L.L.C.
        1101 30th Street, N.W., Suite 300
        Washington, D.C. 20007

        Alan Burch, Esquire
        U.S. Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C. 20530

        Dr. Benjamin Schwartz and
        Dr. Larry Pickering
        c/o National Vaccine Program Office
        Department of Health and Human Services
        200 Independence Avenue, S.W., Room 725
        Washington, D.C. 20201

        Jay Ward Brown, Esquire
        Adam J. Rappaport, Esquire
        Levine Sullivan Koch & Schultz, LLP
        1050 17th Street, N.W., Suite 800
        Washington, D.C. 20036

        *Erica H. Perkins*
        Erica H. Perkins