Source: Legal > Federal Legal - U.S. > District Court Cases - By Circuit > **District of Columbia Circuit - US District Court Cases** [i]
Terms: **lapointe and jurisdiction** and date geq (10/27/2000)  (Edit Search | Suggest Terms for My Search)

✓Select for FOCUS™ or Delivery
☐

*2004 U.S. Dist. LEXIS 27691, \*; 33 Media L. Rep. 1497*

EUGENE **LAPOINTE**, Plaintiff, v. CRAIG VAN NOTE, et al., Defendants.

Civil Action No. 03-2128 (RBW)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2004 U.S. Dist. LEXIS 27691; 33 Media L. Rep. 1497

**November** 9, 2004, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, a former employee of an international political organization, filed a defamation action against defendants, a consortium, an author, and a publisher. The publisher filed a motion to dismiss for lack or personal **jurisdiction.** The consortium and the author filed a partial motion to dismiss claims that were based on statements made outside the one-year statute of limitations, D.C. Code Ann. § 12-301(4).

**OVERVIEW:** Plaintiff's claims were based on a letter calling for plaintiff's removal from his position and an article stating that plaintiff was removed for malfeasance. The article was published in the publisher's journal. The publisher was an organization that was not domiciled in the District of Columbia. The court held that it could not exercise personal **jurisdiction** over the publisher under D.C. Code Ann. § 13-423(a)(1), (3), or (4) because (1) the publisher's membership in the local consortium was not a sufficient basis for asserting **jurisdiction,** (2) the publisher had no other contacts with the District of Columbia, (3) plaintiff failed to show that the author, who wrote the article in the District of Columbia but was not a regular contributor to the publisher's journal, was an agent for the publisher, (4) although the article was distributed in the District of Columbia, the article was not published in the District of Columbia, and (5) the publisher did not have an office, telephone, mailing address, or bank account in the District of Columbia. The continuous tort doctrine did not apply to defamation claims, and the claim based upon the letter was barred by the statute of limitations.

**OUTCOME:** The court granted the publisher's motion to dismiss for lack or personal **jurisdiction.** The court granted the consortium and the author's partial motion to dismiss.

**CORE TERMS:** personal jurisdiction, conspiracy, long-arm, defamation, exercise personal jurisdiction, membership, libelous, continuous, tortious, statute of limitations, non-resident, conspiracy theory, jurisdictional, publisher, libel, confer jurisdiction, continuing tort, forum state, mailing, open letter, defamatory, campaign, burden of establishing, defamatory statement, co-conspirators, prong, lack of personal jurisdiction, motion to dismiss, course of conduct, renewed

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

[EXHIBIT B — All-State Legal]

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
**HN1** When personal **jurisdiction** is challenged under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing personal **jurisdiction** over each individual defendant. In order to meet his burden, the plaintiff must allege specific facts on which personal **jurisdiction** can be based; he cannot rely on conclusory allegations. Further, the plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal **jurisdiction** over any individual defendant." More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
**HN2** The court will dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) only if the defendant can demonstrate beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff. However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. In deciding whether to dismiss a claim under Rule 12(b)(6), the court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the court may take judicial notice. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
Civil Procedure > State & Federal Interrelationships > Application of State Law
**HN3** In diversity cases, a federal district court must look to the jurisdictional law of the forum to determine whether it has personal **jurisdiction** over a non-resident defendant. Fed. R. Civ. P. 4(e). More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
**HN4** Under District of Columbia law, personal **jurisdiction** can be satisfied either by demonstrating that the court has general **jurisdiction** pursuant to D.C. Code Ann. § 13-422 or that the court has personal **jurisdiction** pursuant to the District of Columbia long-arm statute, D.C. Code Ann. § 13-423. The plaintiff bears the burden of establishing a factual basis for the exercise of personal **jurisdiction** over the defendant. In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
**HN5** See D.C. Code Ann. § 13-423.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
**HN6** D.C. Code Ann. § 13-423(a)(1) is co-extensive with the Constitution's due process limit. As a result of this congruence, the only nexus required by § 13-423(a)(1) between the District of Columbia and the nonresident defendant is some affirmative act by which the defendant brings itself within the **jurisdiction** and establishes minimum contacts. Therefore, a plaintiff must demonstrate that exercising **jurisdiction** over a defendant would not offend the traditional notions of fair play and substantial justice. Under the minimum contacts standard, courts must insure that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court in the forum state. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
HN7± D.C. Code Ann. § 13-423(b) acts as a limit on D.C. Code Ann. § 13-423(a) and bars claims unrelated to the acts forming the basis for personal **jurisdiction**. The limitation in § 13-423(b) is meant to prevent the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer **jurisdiction**. Therefore, if a claim is related to the defendant's acts in the District of Columbia, the requirement of § 13-423(b) is satisfied. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
HN8± The burden imposed on a non-resident defendant from being haled into a foreign court will in an appropriate case be considered in light of other relevant factors, including the interest of the forum state in adjudicating disputes; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interests of the several states in furthering fundamental substantive social policies. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
HN9± Courts in the District of Columbia have explicitly rejected the idea that a non-resident defendant can be subjected to **jurisdiction** merely based on its membership in a local organization. More Like This Headnote

Business & Corporate Entities > Agency > Agency Established > Elements of Agency
HN10± To establish that one defendant is an agent of another defendant, a plaintiff must show that (1) the agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent holds a power to alter the legal relations of the principal. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
HN11± Each defendant's contacts with the forum state must be assessed separately to determine personal **jurisdiction**. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
HN12± Under D.C. Code Ann. § 13-423(a)(3), a court in the District of Columbia has **jurisdiction** over a defendant if that defendant (1) caused a tortious injury in the District of Columbia by (2) an act or omission in the District of Columbia. This statute clearly separates the act from the tortious injury and affords personal **jurisdiction** over non-residents only when both act and injury occur in the District of Columbia. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
HN13± To establish personal **jurisdiction** under D.C. Code Ann. § 13-423(a)(3) or D.C. Code Ann. § 13-423(a)(4), the plaintiff must show that he suffered a tortious injury in the District of Columbia. More Like This Headnote

Torts > Defamation & Invasion of Privacy > Libel
HN14± An injury by libel occurs at the site of publication. Libel occurs in the place where published, but the injuries that may flow from libel are not necessarily restricted to the place of publication. Libel and slander take place where the defamatory statement is communicated and not in the place from which the offending material is sent or where it originates. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN15* In order to establish personal **jurisdiction** under D.C. Code Ann. § 13-423(a)(4) of the long-arm statute, a plaintiff must make a prima facie showing that (1) the plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act outside of the District of Columbia; and (3) the defendant satisfies either one of three enumerated minimum contacts with the District of Columbia. These contacts can be proven by showing that the defendant either: (1) regularly does or solicits business in the District of Columbia; (2) engages in any other persistent course of conduct in the District of Columbia; or (3) derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. D.C. Code Ann. § 13-423(a)(4).   More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
*HN16* Courts in the District of Columbia have accepted the validity of the conspiracy theory of **jurisdiction,** but have required particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy. Mere speculation that the nonresident defendants' are co-conspirators are insufficient to meet the plaintiff's prima facie burden. The conspiracy theory of **jurisdiction** should not be applied when there is no concrete evidence in the record indicating that there was a common plan and the plaintiff has simply made bare allegations of a conspiracy.   More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction
*HN17* A conspiracy theory of **jurisdiction** cannot lie if the alleged conspiracy is controverted.   More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions
Torts > Procedure > Statutes of Limitations
*HN18* The statute of limitations period for defamation claims in the District of Columbia is one year. D.C. Code Ann. § 12-301(4). The one year time period begins to run at the time the right to maintain the action accrues. D.C. Code Ann. § 12-301(4). In an action for defamation, the statute of limitations is triggered on the date of publication.   More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions
*HN19* Defamation is a cause of action that arises under state law.   More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions
Torts > Procedure > Statutes of Limitations
*HN20* When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases. The continuing tort doctrine is inapplicable to a claim of defamation. The doctrine arguably could apply where no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm making it proper to regard the cumulative affect of the conduct as actionable.   More Like This Headnote

Torts > Procedure > Statutes of Limitations
*HN21* To establish a continuing tort, a plaintiff must show (1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act within the limitations period.   More Like This Headnote

**COUNSEL:** [*1] For EUGENE **LAPOINTE,** Plaintiff: John J. Jackson, III, Metairie, LA.

For CRAIG VAN NOTE, MONITOR CONSORTIUM, Defendants: Marcia H. Sundeen, Roberta Lazarus Horton, ARNOLD & PORTER, Litigation, Washington, DC; Richard E. Schimel, BUDOW & NOBLE, P.C., Bethesda, MD.

For EARTH ISLAND INSTITUTE, Defendant: Elizabeth Carolyn Koch, Thomas Curley, LEVINE SULLIVAN & KOCH, LLP, Washington, DC; Thomas F. Cope, HOLME ROBERTS & OWEN, LLP, Denver, CO.

**JUDGES:** REGGIE B. WALTON, United States District Judge.

**OPINIONBY:** REGGIE B. WALTON

**OPINION: MEMORANDUM OPINION**

The plaintiff brings this action to recover damages for injuries caused by "defamation and continuing libelous attacks made by [the] defendants," Craig Van Note, Monitor Consortium ("Monitor"), and Earth Island Institute ("EII"). Amended Complaint for Damages and Injunctive Relief ("Compl.") P 2. Currently before this Court are: (1) the Defendant Earth Island Institute's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal **Jurisdiction** ("EII's Mot."); (2) the defendants, Monitor Consortium and Craig Van Note's Renewed Partial Motion to Dismiss the Plaintiff's Amended Complaint ("Monitor's Mot."); (3) the plaintiff's [*2] Opposition to Earth Island Institute's Motion to Dismiss Plaintiff's Amended Complaint ("Pl.'s Opp'n to EII's Mot."); and (4) the plaintiff's Response in Opposition to Defendants Monitor and Craig Van Note's Renewed Partial Motion to Dismiss the Amended Complaint ("Pl.'s Opp'n to Monitor's Mot."). For the following reasons, this Court will grant both EII's Motion to Dismiss for Lack of Personal **Jurisdiction** and Monitor and Van Note's Renewed Partial Motion to Dismiss.

**I. Factual Background**

The plaintiff, Eugene **Lapointe,** has brought this action based upon his claim that he has been the victim of defamatory and libelous attacks committed by the defendants. Compl. P 2. The plaintiff was employed as the Secretary General of the Secretariat of the Convention on International Trade in Endangered Species of Fauna and Flora ("CITES") by the United Nations Environmental Program ("UNEP") from 1982 to November 1990. Id. P 6. According to the plaintiff, prior to and at the seventh Conference of the Parties of CITES in 1989, the defendants commenced a campaign designed to have the plaintiff removed from his position. Specifically, in a letter dated October 16, 1989, the defendants [*3] "circulated an open letter to the Executive Director of [the UNEP]' and to the world media expressly to seek the immediate dismissal'" of the plaintiff. Id. P 8. The plaintiff alleges that as a result of the defendants campaign, two investigations of the plaintiff's behavior were conducted, both having been concluded with the determination that the allegations against him were false. Id. P 11. Despite these favorable findings, the plaintiff contends that the defendants continued to make their accusations against him. Id. P 13.

In October 1990, the plaintiff's employment contract with the UNEP expired and was not renewed. n1 Id. P 14. The plaintiff believes that the UNEP's refusal to renew his contract was based on the defendants' 1989 letter and their continued lobbying of several national governments for his dismissal. Id. PP 8-10. The plaintiff appealed the non-renewal of his employment contract through the United Nations judicial system, which resulted in a ruling that the non-renewal was "capricious and arbitrary" and thus the plaintiff's employment was reinstated. Id. P 15.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The plaintiff notes, however, that despite the expiration of his employment contact in October 1990, he remained an employee until November 1990. Compl. P 14.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*4]**

The plaintiff further alleges that the defendants' campaign against him did not cease and in the Spring of 2003, defendant Van Note wrote an article for Earth Island Journal which stated:

> At the 1989 CITES meeting in Switzerland, CITES Secretary-General Eugene **Lapointe** lobbied fiercely against the proposed Appendix I listing for the elephant . . . He even held press conferences during the meeting to subvert the proposal. Lapionte touched off outrage in leading conservation nations. An inquiry by the United Nations' Environment Program (UNEP) led to **Lapointe's** removal on grounds of malfeasance. Unfortunately, little changed at the Secretariat after **Lapointe's** firing. His replacement was a bumbling UNEP bureaucrat who allowed the CITES staff -- all cronies of **Lapointe** -- to continue their anti-protection ways.

Id. P 19. This lawsuit was initiated by the plaintiff because of the continued allegations the defendants have made about him.

Defendant EII now seeks dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that the Court cannot exercise personal **jurisdiction** over it **[\*5]** and defendants Monitor and Van Note seek partial dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds.

## II. Standards of Review

### (A) Rule 12(b)(2)

*HN1*When personal **jurisdiction** is challenged under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing personal **jurisdiction** over each individual defendant. In order to meet [his] burden, [the] plaintiff must allege specific facts on which personal **jurisdiction** can be based; . . . [he] cannot rely on conclusory allegations." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003). Further, the plaintiff "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal **jurisdiction** over any individual defendant." Atlantigas Corp., 290 F. Supp. 2d at 42.

### (B) Rule 12(b)(6)

*HN2*The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which **[\*6]** would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiffs. Herron v. Veneman, 305 F. Supp. 2d. 64, 70 (D.D.C. 2004) (citations omitted). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the

facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice. E.E.O.C. v. St. Francis Xavier Parochial Sch., 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

## III. Analysis

### (A) Does the Court have Personal Jurisdiction over Earth Island Institute?

*HN3* In diversity cases, such as the one currently before this Court, a federal district court must look to the jurisdictional law of the forum to determine whether it has personal **jurisdiction** over a [*7] non-resident defendant. Fed. R. Civ. P. 4(e). *HN4* Under District of Columbia law, personal **jurisdiction** can be satisfied either by demonstrating that the court has general **jurisdiction** pursuant to D.C. Code § 13-422 or that the court has personal **jurisdiction** pursuant to the District of Columbia long-arm statute, D.C. Code § 13-423. The plaintiff bears the "burden of establishing a factual basis for the exercise of personal **jurisdiction** over the defendant." Crane v. New York Zoological Society, 282 U.S. App. D.C. 295, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 242 U.S. App. D.C. 370, 750 F.2d 1039, 1052 (D.C. Cir. 1984)). Moreover, "in determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Id.

It is clear, and the plaintiff does not contend otherwise, that the Court does not have general **jurisdiction** over EII as it is not a "person domiciled in, organized under the laws of, or maintaining . . . its principal place of business in, the District of Columbia." See D.C. Code § 13-422 [*8]. EII is a non-profit organization incorporated in the State of California with its principal place of business in San Francisco, California and, therefore, EII is not domiciled in the District of Columbia. Defendant Earth Island Institute's Memorandum of Points and Authorities ("EII's Mem.") at 3. Thus, the question for this Court to resolve is whether the Court can exercise personal **jurisdiction** over EII pursuant to the District of Columbia's long-arm statute.

### (1) District of Columbia Long-Arm Statute

The plaintiff contends that he has satisfied the requirements of showing that this Court can exercise personal **jurisdiction** over EII pursuant to D.C. Code § 13-423 (a)(1), (a)(3) and (a)(4). These provisions provide:

> *HN5* (a) A District of Columbia court may exercise personal **jurisdiction** over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> > (1) transacting business in the District of Columbia;
> >
> > * * *
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission [*9] outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

Search - 2 Results - appointe and jurisdiction
Case 1:05-cv-01949-HHJ  Document 9-3  Filed 11/01/2005  Page 8 of 16
Page 8 of 16

\* \* \*

>(b) When **jurisdiction** over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code Ann. § 13-423.

The plaintiff appears to allege that personal **jurisdiction** over EII exists under the District of Columbia long-arm statute because EII (1) maintains a presence in the District of Columbia through its membership in Monitor; (2) distributes the publication at issue in the District of Columbia; and (3) participated in the CITES conference through Van Note who was a press agent for EII. Id. at 1-2; Compl. P 5. Moreover, the plaintiff contends that Van Note, Executive Vice President of Monitor, wrote the allegedly libelous Spring 2003 Earth Island Journal article while operating out of his District of Columbia office, and thus the tortious act in question occurred in the District of Columbia. Id. Each [\*10] of the plaintiff's contentions will be addressed in turn. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The plaintiff, in his papers presented to the Court, did not address each provision of the District of Columbia long-arm statute individually; rather, he simply alleged a number of facts and then generally asserted that he has satisfied the requirements of the three provisions of the District of Columbia long-arm statute.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

### (a) D.C. Code § 13-423 (a)(1)

The plaintiff first claims that this Court can exercise personal **jurisdiction** over EII pursuant to D.C. Code § 13-423(a)(1) because EII committed "acts . . . by an agent (1) transacting any business in the District of Columbia." Pl.'s Opp'n at 2. HN6 D.C. § 13-423(a)(1) is "co-extensive with the Constitution's due process limit." Dickson v. United States, 831 F. Supp. 893, 897 (D.D.C. 1993) (citing First Chicago Int'l v. United Exch. Co., Ltd., 267 U.S. App. D.C. 27, 836 F.2d 1375, 1377 (D.C. Cir. 1988); see also Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808 (D.C. 1976) [\*11] (stating that Congress intended the District of Columbia's long-arm statute to be co-extensive with due process.). As a result of this congruence, courts in this **jurisdiction** have consistently held that "the only nexus required by . . . [§ 13-423](a)(1) . . . between the District of Columbia and the nonresident defendant is some affirmative act by which the defendant brings itself within the **jurisdiction** and establishes minimum contacts.'" n3 Berwyn Fuel, Inc. v. Hogan, 399 A.2d 79, 80 (D.C. 1979) (quoting Cohane v. Arpeja-California, Inc. 385 A.2d 153, 158 (D.C. 1978)). Therefore, the plaintiff must demonstrate that exercising **jurisdiction** over the defendants would not "offend the traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); see also Hasenfus v. Corporate Air Services, 700 F. Supp. 58, 61 (D.D.C. 1988) (quoting Int'l Shoe, 326 U.S. at 316). "Under the minimum contacts' standard, courts must insure that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled [\*12] into court [here].'" GTE New Media Services Inc. v. BellSouth

Search - 2 Results - lapointe and jurisdiction
Case 1:05-cv-01749-TFH   Document 9-3   Filed 11/01/2005   Page 9 of 16
Page 9 of 16

Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)). n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 *HN7* D.C. Code § 13-423(b) acts as a limit on § 13-423(a) and "bars . . . claims unrelated to the acts forming the basis for personal **jurisdiction**." See Dickson, 831 F. Supp. at 897 n. 5; Pollack v. Meese, 737 F. Supp. 663, 666 (D.D.C. 1990) (citing Willis v. Willis, 211 U.S. App. D.C. 103, 655 F.2d 1333, 1336 (D.C. Cir. 1981)). The limitation in § 13-423(b) is "meant to prevent the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer **jurisdiction**.'" Cohane, 385 A.2d at 158 (quoting Malinow v. Eberly, 322 F. Supp 594, 599 (D. Md. 1971)). Therefore, if a claim is related to the defendant's acts in the District of Columbia, the requirement of § 13-423(b) is satisfied. Dickson, 831 F. Supp. at 897.

n4 *HN8* The burden imposed on the non-resident defendant from being haled into a foreign court will "in an appropriate case be considered in light of other relevant factors, including the interest of the forum state in adjudicating disputes . . .; the plaintiff's interest in obtaining convenient and effective relief . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interests of the several states in furthering fundamental substantive social policies." World-Wide Volkswagen, 444 U.S. at 292 (internal citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*13]

The plaintiff argues, without specificity, that based on the allegations set forth in his complaint, EII has more than adequate contact with the District of Columbia to be subject to **jurisdiction** in this Court. Pl.'s Opp'n to EII's Mot. at 2. Thus, the plaintiff concludes that he has established EII's minimum contacts with the District of Columbia. Id. EII counters that for this Court to assert **jurisdiction** it "would unquestionably offend traditional notions of fair play and substantial justice" as no minimum contacts exist between EII and the District of Columbia. EII's Mem. at 1.

In the seminal case in this area of jurisprudence, International Shoe, the Supreme Court found that a Delaware corporation that employed salesmen who resided in the State of Washington, regularly sold shoes in permanent display rooms in Washington, resulting in large volumes of business in Washington, had sufficient contact with the State of Washington to be hailed into court there without violating due process. Int'l Shoe Co., 326 U.S. at 320. In contrast, it is undisputed that outside EII's membership in Monitor, EII has no other connection to the District of Columbia. For example, [*14] it does not maintain an office in the District of Columbia, nor does it employ any staff or use the service of volunteers here. EII's Mot., Declaration of David Phillips ("Phillips Dec.") PP 5-6. Moreover, EII does not have an address, Post Office Box or telephone number in this **jurisdiction**, it conducts no business here, and has no bank accounts or other tangible or real property in the District. Id.

Further, EII's membership in Monitor provides no basis for this Court to exercise personal **jurisdiction** over it. *HN9* Courts in this **jurisdiction** have explicitly rejected the idea suggested by the plaintiff that a non-resident defendant can be subjected to **jurisdiction** merely based on its membership in a local organization. For example, in American Ass'n of Cruise Passengers v. Cunard Line Ltd., a former member of this Court found that personal **jurisdiction** could not be asserted over an out-of-state defendant because of his

Search - 2 Results - appoints and jurisdiction
Case 1:05-cv-01749-PLF Document 9-3 Filed 11/01/2005 Page 10 of 16
Page 10 of 16

membership in a District of Columbia trade association. 691 F. Supp. 379, 380 (D.D.C. 1987). There, the defendants only contacts with the District consisted "entirely of sporadic attendance at trade association meetings held in the District of Columbia [*15] and . . . communications between [the defendant] . . . and the national office of [the association, which at the time of the communications was] located in the District of Columbia." Id. at 381. Similarly, all of EII's alleged contacts with the District stem solely from its membership in Monitor. Moreover, as the court in Investment Co. Institute v. United States, noted, "it would surely come as a surprise to the members of the many trade associations having offices . . . [in the District of Columbia] that their memberships counted as intrastate business for jurisdictional purposes." 550 F. Supp 1213, 1217 n.6 (D.D.C. 1982). Accordingly, the court in Investment Co. Institute held that the defendant's continuing relationship with "quasi-governmental entities" in the District of Columbia could not be regarded as minimum contacts for the basis of establishing **jurisdiction**. Id. Therefore, it is clear that EII's affiliation with Monitor is not a sufficient basis for this Court to assert personal **jurisdiction** under D.C. Code § 13-423(a)(1).

Finally, this Court must reject the plaintiff's contention that personal **jurisdiction** [*16] can be exercised over EII because of the actions of Van Note. The plaintiff contends that Van Note is an agent of EII because he (1) heads Monitor, which EII is a member; (2) sets the agendas for Monitor meetings in the District of Columbia; and (3) authored the 2003 Earth Island Journal article about CITES, which is the core business interest of both Monitor and EII. EII contends, however, that Van Note is not an employee or agent of EII, nor is he a regular contributor to EII's journal and he received no compensation for writing the article. EII's Mot, Phillips Decl. P 17. These facts are uncontested by the plaintiff. HN10 To establish that Van Note is an agent of EII, the plaintiff must show that "(1) the agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent holds a power to alter the legal relations of the principal." Presidential Motor Yacht Corp. v. President Marine, Ltd., 753 F. Supp. 7, 13 (D.D.C. 1990) (quoting Proctor v. Holden, 75 Md. App. 1, 540 A.2d 133, 142 (Md. Ct. Spec. App. 1988)). Based upon the undisputed facts in the record before this Court, it is clear [*17] that the plaintiff has failed to establish any facts to support a conclusion that Van Note was an agent for EII. Furthermore, to the extent that the plaintiff relies upon this Court's **jurisdiction** over Van Note to assert **jurisdiction** over EII, his claim must fail since HN11 each defendants' contacts with the forum state must be assessed separately to determine personal **jurisdiction**. McFarlane v. Esquire Magazine, 316 U.S. App. D.C. 35, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (explaining that the "writer is not the publisher" thus, the publisher's contacts with the forum for jurisdictional purposes "must be assessed separately" from the writer's); see also Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984) (rejecting the notion that **jurisdiction** over an employee confers **jurisdiction** over the employer, reiterating the principle that "each defendant's contacts with the forum State must be met individually.").

For all of the foregoing reasons, the Court concludes that the plaintiff has failed to satisfy his burden of establishing that EII is subject to personal **jurisdiction** in this Court under D.C. Code § 13-423(a)(1).

### (b) D.C. Code § 13-423(a)(3) [*18]

HN12 Under D.C. Code § 13-423(a)(3), a court in the District of Columbia has **jurisdiction** over a defendant if that defendant (1) caused a tortious injury in the District of Columbia by (2) an act or omission in the District of Columbia. This "statute clearly separates the act from the tortious injury and affords personal **jurisdiction** over non-residents only when both act and injury occur in the District of Columbia." Margoles v. Johns, 157 U.S. App. D.C. 209, 483 F.2d 1212, 1214 (D.C. Cir. 1973); see also Freiman v. Lazur, 925 F. Supp. 14, 22 (D.D.C. 1996). Assuming, without deciding, that the plaintiff can show he suffered an injury in the

District of Columbia, n5 the plaintiff has nonetheless failed to satisfy the second prong of the test. The plaintiff argues that the second prong of the District of Columbia long-arm statute is satisfied because Van Note maintains an office in the District of Columbia and wrote some or all of the allegedly defamatory article here. Pl.'s Opp'n to EII's Mot. at 2-3; Compl. P 17. As concluded above, however, the Court finds no merit to the plaintiff's argument that Van Note was EII's agent. Thus, if Van Note was not [*19] EII's agent, this Court cannot conclude that Van Note's actions can be considered as acts of EII for the purpose of exercising personal **jurisdiction** over EII under the long-arm statute.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 HN13 To establish personal **jurisdiction** under D.C. Code § 13-423 (a)(3) or § 13-423 (a)(4), the plaintiff must show that he suffered a tortious injury in the District of Columbia. EII argues that the plaintiff did not suffer an injury in the District of Columbia and that "the only location where [the] plaintiff alleges to have been injured is in Europe, where the plaintiff and his family live." EII's Mem at 6. The plaintiff held an international political position, which required substantial interaction with institutions in the United States. Compl. P 2. Many of those institutions are located in the District of Columbia, such as the United States CITES authorities and the Department of the Interior, which administers CITES within the United States. Id. Thus, the District of Columbia was obviously the location of a great amount of the plaintiff's business activities. Therefore, it appears that the plaintiff was injured in the District of Columbia. See Crane, 894 F.2d at 457-458 ("clearly, economic loss resulting from defamation is most likely to be felt in one's place of business whatever the locus of its publication").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*20]

The plaintiff also appears to argue that he can satisfy the second prong of the test because the 2003 issue of Earth Island Justice was circulated in the District of Columbia. Compl. P 5. This argument must also be rejected. In Moncrief v. Lexington Herald-Leader Co., 257 U.S. App. D.C. 72, 807 F.2d 217 (D.C. Cir. 1986), a libel action was brought against a non-resident newspaper publisher after an employee of the publisher sent a "false, defamatory, and malicious" article into the District of Columbia from Wisconsin. Id. at 219. The mailing of the article into the District of Columbia was held by the Circuit Court to be insufficient to confer **jurisdiction** to this district court because the "act" which led to the injury -- the printing and mailing of the article -- occurred outside the District of Columbia. Id.; see also Moncrief v. Lexington Herald-Leader Co., 631 F. Supp. 772, 773 (D.D.C. 1985) ("In a libel case, the act occurs wherever the libel is actually produced"), aff'd, 257 U.S. App. D.C. 72, 807 F.2d 217 (D.C. Cir 1986). n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The Moncrief court also relied upon two cases interpreting the Virginia long-arm statute in situations similar to the instant case. See Davis v. Costa-Gavras, 580 F. Supp. 1082, 1087 (S.D.N.Y. 1984) (deciding that Virginia's long-arm statute does not confer **jurisdiction** based on the act of sending allegedly libelous books into the state); St. Clair v. Righter, 250 F. Supp. 148, 151 (W.D. Va. 1966) (finding that the acts of writing and mailing letters outside Virginia does not confer **jurisdiction** because the letters were sent to Virginia).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*21]

Similarly, in the instant case, EII has not committed any "act" within the District of Columbia

which would justify this Court exercising personal **jurisdiction** pursuant to D.C. Code § 13-423(a)(3). HN14 "An injury by libel occurs at the site of publication." Crane, 894 F.2d at 457 (citing Howser v. Pearson, 95 F. Supp. 936, 938 (D.D.C. 1951)). Thus, the act that allegedly led to the plaintiff's injury -- publishing the alleged libelous article in the Earth Island Journal -- occurred in San Francisco. Consequently, although the Earth Island Journal was ultimately distributed in the District of Columbia, this Court cannot exercise personal **jurisdiction** over EII pursuant to D.C. Code § 13-423(a)(3) based on an act that occurred outside this forum. See Crane, 894 F.2d at 457 (stating that "libel occurs in the place where published, but the injuries that may flow from libel are not necessarily restricted to the place of publication."); Howser, 95 F. Supp at 938 ("libel and slander take place where the defamatory statement is communicated and not in the place from which [*22] the offending material is sent or where it originates"); see also Tavoulareas v. Comnas, 232 U.S. App. D.C. 17, 720 F.2d 192, 193 (D.C. Cir. 1983) (holding that allegedly defamatory statements made during phone conversations between Massachusetts and New York do not constitute tortious acts in the District of Columbia). n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Moreover, because this Court has concluded that Van Note is not an agent of EII, the fact that he may have written some of the article that appeared in the 2003 issue of the Earth Island Journal in the District of Columbia is of no moment because since he is not their agent, his actions cannot be attributed to EII. Cf. McFarlane, 74 F.3d at 1303 (noting that the plaintiff cannot attribute malice of an author of an article to the publisher of the article when the author was an independent contractor.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### (c) D.C. Code § 13-423 (a)(4)

Finally, the plaintiff alleges that he has met the burden to establish the Court's ability to exercise personal [*23] **jurisdiction** over EII under D.C. Code § 13-423(a)(4). HN15 In order to establish personal **jurisdiction** under this section of the long-arm statute, the plaintiff "must make a prima facie showing that (1) [the] plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act . . . outside of the District of Columbia; and (3) [the defendant satisfies either] one of three enumerated [minimum] contacts with the District of Columbia." Blumenthal v. Drudge, 992 F. Supp. 44 at 53 (1998) (citing Trager v. Berrie, 593 F. Supp. 223, 225 (D.D.C. 1984); Akbar v. New York Magazine Co., 490 F. Supp. 60, 63 (D.D.C. 1980)). These contacts can be proven by showing that the defendant either: (1) regularly does or solicits business in the District of Columbia; (2) engages in any other persistent course of conduct in the District of Columbia; or (3) derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. D.C. Code § 13-423(a)(4). In this case, the plaintiff does not assert which facts, if any, demonstrate that EII has any [*24] of these contacts with this **jurisdiction.** To the extent the plaintiff is relying on EII's membership in Monitor and Van Note's participation in the CITES conference or the writing of the article, the Court has already addressed how these actions do not meet the minimum contacts requirement. Moreover, it is uncontested that EII does not maintain an office in the District of Columbia, nor does it have a telephone, mailing address, or bank account in the District. EII's Mot., Phillips Dec. P 5-7. Further, the plaintiff does not contest that EII conducts business in the District of Columbia other than being a member of Monitor. Id. P 8. Thus, the plaintiff again fails to meet his burden to establish that this Court has personal **jurisdiction** over EII.

### (2) Conspiracy Theory as a Basis for Exercising Personal Jurisdiction

The plaintiff presents an alternative theory for this Court having personal **jurisdiction** over EII based upon the allegation that EII entered into a conspiracy with Monitor Consortium and Van Note to defame him. Pl.'s Opp'n to EII's Mot. at 3-4. The plaintiff alleges that "the defendants have acted in concert through Monitor under its various names and Van Note, [*25] their representative and agent" for the purpose of making false allegations against the plaintiff, which he characterizes as "group libel." Compl. PP 24, 26. The plaintiff relies on Mandelkorn v. Patrick, 359 F. Supp. 692 (D.D.C. 1973) as support for his conspiracy theory. Pl's Opp'n to EII's Mot. at 3. In Mandelkorn, the district court rejected the non-resident defendants' jurisdictional challenge since the defendants had not denied the plaintiff's conspiracy "allegations . . . nor their roles therein," which the Court therefore accepted as true. Id. at 695. The Mandelkorn court itself emphasized that it would have ruled quite differently on the defendants' jurisdictional challenge had the defendants denied the existence of the conspiracy or in the event they subsequently did so. Id. at 697. Since Mandelkorn was decided, $^{HN16}$courts in this Circuit have accepted the validity of the conspiracy theory of **jurisdiction,** but "have required particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Dooley v. United Technologies Corp., 786 F. Supp. 65, 78 (D.D.C. 1992); [*26] see also Judd v. Resolution Trust Corp., 1999 WL 1014964 (D.D.C. Aug. 17, 1999). Moreover, "these court have found mere speculation that the nonresident defendants' are co-conspirators insufficient to meet [the] plaintiff's prima facie burden." Id. For example, in Dooley, the court concluded that the exercise of personal **jurisdiction** under the conspiracy theory was warranted because the plaintiff had set forth in "extraordinary detail, his allegations of conspiracy and each defendant's [sic] alleged involvement." Dooley, 786 F. Supp. at 78. Specifically, the plaintiff "catalogued numerous meetings allegedly held by the co-conspirators, and in many instances described discussions which took place. Id. Additionally, he . . . set forth a number of overt acts [committed] within the District of Columbia allegedly committed by [the] co-conspirators." Id. The court in Dooley therefore adhered to the instructions of the District of Columbia Circuit, which had earlier held that the conspiracy theory of **jurisdiction** should not be applied when "there is no concrete evidence in the record indicating that there was a common plan. [*27] . . ." and the plaintiff had simply made "bare allegations" of a conspiracy. First Chicago Int'l v. United Exchange Co., Ltd., 267 U.S. App. D.C. 27, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

In this case, the plaintiff has merely asserted unsupported allegations of an alleged conspiracy against him. The only facts advanced by the plaintiff that would support his theory that EII was part of a conspiracy are (1) EII's membership in Monitor and (2) EII's publication of the Van Note article, which the plaintiff contends is defamatory. These facts certainly do not rise to the level of a demonstrated common plan to defame the plaintiff. Thus, again, the plaintiff's argument for this Court to exercise personal **jurisdiction** over EII must fail. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Moreover, to the extent the caselaw indicates that $^{HN17}$a conspiracy theory of **jurisdiction** cannot lie if the alleged "conspiracy is controverted," the plaintiff's conspiracy claim here is called into doubt since the conspiracy is clearly challenged and the record is devoid of facts that a conspiracy actually existed. First Chicago Int'l, 836 F.2d at 1379 n.4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*28]

For all of the foregoing reasons, this Court concludes that it does not have personal **jurisdiction** over EII and thus EII must be dismissed as a defendant in this matter.

### (B) The Statute of Limitations Challenge

Defendants Monitor and Van Note argue that under the applicable District of Columbia statute of limitations, part of the plaintiffs defamation claim must be dismissed. Monitor's Mot. at 1. <sup>HN18</sup>The statute of limitations period for defamation claims in the District of Columbia is one year. D.C. Code § 12-301(4); n9 Jin v. Ministry of State Security, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (defamation claims that arose more than one year before the complaint was filed dismissed); Mullin v. Washington Free Weekly, Inc., 785 A.2d 296, 298 (D.C. 2001). The one year time period begins to run at the time the right to maintain the action accrues. D.C. Code § 12-301(4); Doe v. District of Columbia Comm'n on Human Rights, 624 A.2d 440, 444 (D.C. 1993). In an action for defamation, the statute of limitations is triggered on the date of publication. Foretich v. Glamour, 741 F. Supp. 247, 252 (D.D.C. 1990) **[*29]** (citations omitted). Monitor and Van Note assert that the one year limitation period precludes the filing of alleged acts of defamation that occurred prior to October 17, 2002, which includes any claims regarding the 1989 "open letter" because they fall outside the statute of limitations period. Monitor's Statement of Points and Authorities in Support of its Motion to Dismiss, or in the Alternative for Summary Judgment ("Monitor's Mem.") at 2. Thus, they argue that the only alleged defamatory statement the plaintiff has identified that falls within the time frame authorized by District of Columbia law is the Spring 2003 article written by Van Note and published in the Earth Island Journal. Monitor's Mem. at 6. n10 The plaintiff argues that the defendants' alleged libelous acts constitute a continuing tort that is "worsening" the plaintiff's injuries and, thus, acts committed prior to October 17, 2002, are not barred by the statute of limitations. n11 Pl's Opp'n at 2. Specifically, he alleges that "the two libelous documents[,the 1989 "open letter" and the Spring 2003 article,] are only a part of an ongoing campaign of defamation against the plaintiff," which constitutes one continuous **[*30]** tort against the plaintiff that collectively are not barred by the statute of limitations. Compl. P 27.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 <sup>HN19</sup>"Defamation is a cause of action that arises under state law," and therefore the District of Columbia limitation period applies. Jin v. Ministry of State Security, 254 F. Supp. 2d 61, 68 (D.D.C. 2003).

n10 Monitor had previously filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. This motion became moot after the plaintiff filed his amended complaint. Monitor has not renewed its summary judgement motion as to the plaintiff's amended complaint, but rather has filed the current motion to dismiss. Monitor's Mem. at 2.

n11 To support to his continuous tort theory, the plaintiff claims that he is still discovering the full nature of the defendant's alleged tortious conduct. Id. at 2.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The plaintiff places great weight on the decisions of Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818 (D.C. Cir. 1984) and Beard v. Edmondson and Gallagher, 790 A. 2d 541 (D.C. 2002). **[*31]** These cases hold that <sup>HN20</sup>"when a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." Page, 729 F.2d at 821. However, Page involved a medical malpractice suit brought pursuant to the Federal Torts Claim Act, not a defamation claim brought under District of Columbia law. Id. at 819. Moreover, the Page reasoning has been determined by the District of Columbia Court of Appeals not to apply in cases of slander or liable. See

Search Results - laponte and jurisdiction
Case 1:05-cv-01748-TFH Document 9-3 Filed 11/01/2005 Page 15 of 16
Page 15 of 16

Wallace v. Skadden Arps, 715 A.2d 873 (D.C. 1998). In Wallace, the District of Columbia Court of Appeals rejected the plaintiff's contention that her former employer's defamatory statements were all a part of a single continuing course of conduct and thus the statute of limitations did not begin to run until the conduct ceased. Id. at 882. Instead, the court held that each alleged defamatory statement "constituted a new assault on the plaintiff's reputation,' and . . . [thus] gave rise to a separate right of action." Id. (citing Jones v. Howard Univ., 574 A.2d 1343, 1348 (D.C. 1990)). [*32] In addition, the court decided that "the running of the statute [cannot] be prevented by repetitions of the [defamation]." Id. (citations omitted). In Dooley v. United Technologies Corp, 786 F. Supp. 65, 1992 WL 167053 at *13 (D.D.C. 1992), another member of this court also held that the continuing tort doctrine, which the plaintiff attempts to apply here, was inapplicable to a claim of defamation. Id. (citing Perkins v. Nash, 697 F. Supp. 527, 533 (D.D.C. 1988)). The Dooley court did note in dicta, however, that the doctrine "arguably could apply . . . where no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm [making it] proper to regard the cumulative affect of the conduct as actionable.'" Id. (quoting Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. 1984)). Here, the plaintiff makes no assertion that this exception applies and based on the facts presented to the Court, the Court cannot conclude that it does either. Therefore, the continuous tort doctrine does not apply and any claims of defamation that occurred prior to October 17, 2002, must [*33] be dismissed. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Even if this Court were to apply the continuous torts theory, the plaintiff's claim would still fail because he has not properly alleged a continuing tort. HN21 To establish a continuing tort, the plaintiff must show "(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act . . . within the limitations period." Beard, 790 A.2d at 547-548 (quoting DeKine v. District of Columbia, 422 A.2d 981, 988 n. 16 (D.C. 1980)). Here, the first allegedly libelous statement was the 1989 letter. The next allegedly libelous act that the plaintiff identifies was in 2003, fourteen years later. This can hardly be considered continuous. Moreover, the two documents in question contain different accusations. The 1989 "open letter" accuses the plaintiff of "exceeding the legal mandate of the Secretariat" and legalizing "hundreds of tonnes of poached ivory stocks" and calls for his removal from the Secretariat position. On the other hand, the Spring 2003 article discusses his removal for "malfeasance" and his replacement by his own "cronies." Thus, these two documents are not repetitive and, indeed, constitute two individual acts instead of one continuous act.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*34]

### IV. Conclusion

For the aforementioned reasons, this Court grants Earth Island Institute's Motion to Dismiss for Lack of Personal **Jurisdiction** and Monitor and Craig Van Note's Renewed Partial Motion to Dismiss.

**SO ORDERED** this 9th day of November, 2004. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 An Order consistent with this Court's ruling accompanies this Memorandum Opinion.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

REGGIE B. WALTON

United States District Judge

**ORDER**

Upon consideration of defendant Earth Island Institute's Motion to Dismiss the Plaintiff's Amended Complaint for Lack of Personal **Jurisdiction,** defendants Monitor Consortium and Craig Van Note's Renewed Partial Motion to Dismiss the Plaintiff's Amended Complaint, and the plaintiff's oppositions thereto, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Earth Island Institute's motion to dismiss for lack of personal **jurisdiction** is **GRANTED.** It is further

**ORDERED** that Monitor and Craig Van Note's renewed partial motion to dismiss [*35] is **GRANTED.**

**SO ORDERED** this 9th day of November, 2004.

REGGIE B. WALTON

United States District Judge

Source: Legal > Federal Legal - U.S. > District Court Cases - By Circuit > **District of Columbia Circuit - US District Court Cases** [i]
Terms: **lapointe and jurisdiction and date geq (10/27/2000)** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Thursday, October 27, 2005 - 9:31 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.