UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No. 1:05-CV-10749-RWR

DR. MARK GEIER and
DAVID GEIER,

    Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES;
DR. SARAH K. PARKER, Children's Hospital, Department of Pediatrics;
DR. JAMES TODD, Children's Hospital, Department of Pediatrics;
DR. BENJAMIN SCHWARTZ, Department of Health and Human Services;
DR. LARRY PICKERING, CDC;
THE AMERICAN ACADEMY OF PEDIATRICS,

    Defendants.

## DECLARATION OF SARAH K. PARKER, M.D.

I, Dr. Sarah K. Parker, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Colorado resident and an Assistant Professor of Pediatrics and Pediatric Infectious Disease at the University of Colorado Health Sciences Center in Denver, Colorado. I am also a member of the medical staff at the Children's Hospital in Denver, Colorado. The Children's Hospital and its affiliated clinics serve as the only locations where the University provides pediatric training and service.



1

2.      I spend approximately seventy-five percent of my time at work on bench research on phospholipases in Mycobacteria. My research activities are almost entirely supported by a grant from the National Institute of Health Division of Immunology and Infectious Disease, located in Bethesda, Maryland. The University of Colorado Health Sciences Center and Children's Hospital provide a small amount of support and funding for my research and clinical activities, as well as employment benefits.

3.      I spend the remaining twenty-five percent of my professional time providing clinical services to pediatric patients at The Children's Hospital. My professional services are billed to patients through University Physicians, Inc. University Physicians is located in Denver, Colorado.

4.      I coauthored an article entitled "Thimerosal-Containing Vaccines and Autistic Spectrum Disorder: A Critical Review of Published Original Data." The article was published in the September 2004 issue of *Pediatrics*. *Pediatrics* is an official peer-reviewed journal of the American Academy of Pediatrics. *Pediatrics* is a professional journal that publishes articles primarily for physicians.

5.      The purpose of the article was to "systematically review published articles that report original data pertinent to the potential associations between thimerosal-containing vaccines." Because there is a debate in the medical community about whether vaccines cause autism, the article "assess[ed] the quality of evidence assessing a potential association between thimerosal-containing vaccines and autism and evaluate[d] whether that evidence suggests accepting the hypothesis" that thimerosal might cause autism.

2

6. The article reviewed the literature discussing a causal link between thimerosal and autism, including several articles authored by the Geiers. Articles for analysis were identified through the National Library of Medicine's Medline database or a review of the bibliographies of other pertinent literature. The article evaluated all articles based upon original data that evaluated an association between thimerosal-containing vaccines and ASD/neurodevelopmental disorders or pharmacokinetics of ethylmercury in vaccines.

7. My research and writing for the article was conducted in Denver, Colorado. My work on the article took places almost entirely on nights and weekends. None of the grant money I receive from the NIH was devoted to preparation of the article.

8. While drafting the article, I communicated by phone, by email and in person with the article's coauthors, Dr. James Todd at the University of Colorado Health Sciences Center and Children's Hospital in Denver, Colorado, Dr. Benjamin Schwartz at the Centers for Disease Control in Atlanta, Georgia, and Dr. Larry K. Pickering at the Centers for Disease Control in Atlanta, Georgia. None of the communications with my coauthors occurred in Washington, D.C. To my knowledge, none of my coauthors was in Washington, D.C. during our telephone conversations.

9. I did not communicate with officials at the Department of Health and Human Services or any other individuals in Washington, DC about the drafting and publication of the article.

10.     I am a member of the American Academy of Pediatrics, which is headquartered in Elk Grove Village, Illinois. Although I understand that American Academy of Pediatrics maintains an office in Washington, D.C., to my knowledge I have never spoken or corresponded with anyone in that office.

11.     In the Spring of 2004, I submitted a draft of the article electronically via the *Pediatrics* submission website at http://mc.manuscriptcentral.com/pediatrics. The *Pediatrics* submission website makes no specific reference to any connection with Washington, DC. To my knowledge, I have never authored an article published by a District of Columbia based publisher.

12.     In May 2004, the Associate Editor of *Pediatrics*, Dr. Ralph Feigin from Houston, Texas, contacted me by email through the *Pediatrics* submission site to inform me that the manuscript had been accepted for publication by *Pediatrics* with minor suggested revisions. I forwarded Dr. Feigin's email and the subsequent revisions to my coauthors before resubmitting the article to the same Pediatrics website. I subsequently received proofs of the article, which I reviewed and with my coauthors.and approved.

13.     I was not compensated for the article I submitted to *Pediatrics*. I have not received subscription fees from *Pediatrics*, royalties for the sale of *Pediatrics,* or any other compensation from the American Academic of Pediatrics. I have never received any form of compensation for the research that I performed to produce the article. None of my research for the article was sponsored by any pharmaceutical company or any other person or company.

14. My work is conducted primarily in Colorado. Children's Hospital is the only hospital at which I have privileges to admit patients for medical treatment. I see all of my patients in Colorado and conduct all of my research in Colorado.

15. I do not engage in or solicit any business in the District of Columbia. I do not maintain a place of business in the District of Columbia. I have never derived any revenue from goods used or consumed or services rendered in the District of Columbia. I do not have privileges at any hospitals in the District of Columbia. I do not see patients in the District of Columbia. To my knowledge, none of my patients resides in the District of Columbia. I do not conduct research in the District of Columbia. None of my research is based on data collected from or compiled in the District of Columbia.

16. I do not engage in any persistent course of conduct in the District of Columbia. My home address, mailing address and telephone numbers are all located in Colorado. I do not have an address, post office box or telephone number in the District of Columbia. I do not have bank accounts or other tangible or real property in the District of Columbia.

17. I have only been to the District of Columbia three times since I commenced my medical training in 1991. The purpose of two of these visits was to attend medical conferences. The other visit was to spend time with a non-physician friend who resides in the District of Columbia.

18.  During my attendance at medical conferences located in the District of Columbia, I have served as a presenter on only one occasion. From March 21-24, 2005, I attended the 39th National Immunization Conference in Washington, D.C. At that conference, I presented at a one-hour plenary session on "Hot Topics in Vaccine Safety." In my presentation, I discussed the body of literature that analyzed the causal relationship between thimerosal and autism.

19.  During my presentation, I reviewed the methodology of the Geiers' studies. To describe the population of their studies, I made clear that the Geiers "used the vaccines administered in the United States <u>by manufacturer</u> per the Centers for Disease Control." I further described that the Geiers used manufacturer-specific data that would not normally be available to physicians or members of the general public. In doing so, I mentioned that my coauthors and I published a clarification to our original paper stating that the Geiers actually obtained the manufacturer-specific data.

20.  I was not compensated in any way for my presentation, but was reimbursed my travel expenses and given free attendance at the conference.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 25th day of October, 2005.

_____
Sarah K. Parker, M.D.