# In the United States Court of Federal Claims

RECEIVED OCT 1 4 2003

OFFICE OF SPECIAL MASTERS

October 9, 2003

FILED OCT 9 2003 U.S. COURT OF FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
JEANINE WEISS and JOSEPH WEISS,        *
Parents of CHRISTOPHER WEISS,          *
                                       *
              Petitioners,             *
                                       *
    v.                                 *    No. 03-190V
                                       *    PUBLISHED
SECRETARY OF THE DEPARTMENT OF         *
HEALTH AND HUMAN SERVICES,             *
                                       *
              Respondent.              *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER

After receiving petitioners' expert Dr. Mark Robin Geier's two affidavits, the undersigned issues this preliminary ruling. The evidence in the medical records contemporaneous with the events at issue in this case show that Christopher Weiss did not have an acute encephalopathy on January 25, 2000, which was the 15th day after he received MMR vaccine on January 10, 2000. The records state that he had had fever on the night of the 24th, cried a lot, had a temperature of 101°, or otherwise less than 100.2°, and was teething. On physical examination, Christopher was **alert and in no acute distress**. His temperature was 100.7° and he had several new teeth. His left tympanic membrane was red with excessive fluid. The doctor diagnosed Christopher with left otitis media. He had several tiny white spots at the bottom of his jaw (gingiva) and was prescribed Amoxicillin.

Three days later, Christopher saw the doctor again. He was still alert, but irritable with a blister on his tongue. He refused to eat or drink, had very red gums, but no fever. His left tympanic membrane was better, the white spots were gone, and he had three new teeth. His temperature was 99.1°.

Petitioners' amended petition includes an allegation of a Table encephalopathy. 42 U.S.C. § 300aa-14, as modified by 42 CFR § 100.3(b)(2), states:

> (i) An acute encephalopathy is one that is sufficiently severe so as to require hospitalization (whether or not hospitalization occurred).
> (A) For children less than 18 months of age who present without an associated seizure event, an acute encephalopathy is indicated by a significantly decreased level of consciousness lasting for at least 24 hours.
> ...

Section 100.3(b)(2)(i)(D) states:

> A "significantly decreased level of consciousness" is indicated by the presence of at least one of the following clinical signs for at least 24 hours or greater....:
>> (1) Decreased or absent response to environment (responds, if at all, only to loud voice or painful stimuli);
>> (2) Decreased or absent eye contact (does not fix gaze upon family members or other individuals); or
>> (3) Inconsistent or absent responses to external stimuli (does not recognize familiar people or things).

Section 100.3(b)(2)(i)(E) states:

> The following clinical features alone, or in combination, do not demonstrate an acute encephalopathy or a significant change in either mental status or level of consciousness as described above: Sleepiness, irritability (fussiness), high-pitched and unusual screaming, persistent inconsolable crying, and bulging fontanelle. ...

Christopher's mother states in her affidavit and in the amended petition that on the night of January 24, 2000, Christopher became very ill and developed a fever. ¶ 3 of Mrs. Weiss'

affidavit. She states that, on January 25, 2000, at the doctor's office, Christopher was not his normal happy, cheerful self. He was extremely sick and miserable. She concedes he was awake. ¶ 4 of Mrs. Weiss' affidavit.

Dr. Geier, who is a geneticist and an obstetrician, is not qualified to give a neurological diagnosis.[1] Nonetheless, he has opined in his first affidavit, that Christopher had an acute encephalopathy beginning on the night of January 24, 2000, 14 days after receipt of his MMR vaccination based on the information in paragraphs 3 and 4 of Mrs. Weiss' affidavit. In his

---

[1] It is doubtful that Dr. Geier fulfills the American Medical Association (AMA) guidelines for expert witnesses: H.265-994 Expert Witness Testimony: (3)(a) "Existing policy regarding the competency of expert witnesses ... (BOT Rep. SS A-89) is reaffirmed, as follows: The AMA believes that the minimum statutory requirements for qualification as an expert witness should reflect the following: (i) that the witness be required to have comparable education, training, and occupational experience in the same field as the defendant; (ii) that the occupational experience include active medical practice or teaching experience in the same field as the defendant; and (iii) that the active medical practice or teaching experience must have been within five years of the date of the occurrence giving rise to the claim." American Medical Association, Policy Compendium (1999). In addition, the AMA "Code of Medical Ethics" states at 9.07 Medical Testimony: "Medical experts should have recent and substantive experience in the area in which they testify and should limit testimony to their sphere of medical expertise.... The medical witness must not become an advocate or a partisan in the legal proceeding." AMA Council on Ethical and Judicial Affairs, "Code of Medical Ethics" (2002-2003 edition). Dr. Geier's expertise, training, and experience is in genetics and obstetrics. He is however a professional witness in areas for which he has no training, expertise, and experience. Petitioners must seriously consider whether they want to proceed with a witness whose opinion on neurological diagnosis is unacceptable to the undersigned. When we reach the end of this case and the question of expert fees arises, there will be serious doubt whether Dr. Geier should be compensated for his time devoted to diagnosing an acute encephalopathy where none exists, and discussing (in his first supplemental affidavit) the MMR reactions of acute encephalopathy and encephalitis when neither is relevant in this case because Christopher, who was alert and in no acute distress on the 15th day after his MMR vaccination (when Dr. Geier opines his acute encephalopathy began on the 14th day, less than 24 hours earlier), could not possibly have had a Table acute encephalopathy or encephalitis. Moreover, three days later, he was also alert and in no acute distress. He was, however, miserable on January 25th with left otitis media, a fever, and new teeth, and on January 28th with a blister on his tongue and very red gums (with three new teeth).

supplemental affidavit #1, he discusses in depth how MMR can cause acute encephalopathy and encephalitis. Those portions of his supplemental affidavit #1 discussing acute encephalopathy and encephalitis are hereby **STRICKEN** from the record as irrelevant since Christopher had neither an acute encephalopathy nor encephalitis. A child who is alert and in no acute distress does not have an acute encephalopathy or encephalitis. See Duncan v. Secretary of HHS, No. 90-3809V, 1997 WL 7529 (Fed. Cl. Spec. Mstr. Feb. 6, 1997) (without holding a hearing, special master dismissed case asserting measles encephalopathy because petitioner's affidavit contradicted contemporaneous medical records as to onset of symptoms and physician's report in support of petitioner was insufficient). See also, Bunting v. Secretary of HHS, 931 F.2d 867, 873 (Fed. Cir. 1991) ("the conclusions of a medical expert are not binding on the decisionmaker...."); Sternberger v. US, 401 F.2d 1012, 1016-17 (Fed. Cl. 1968) ("Even uncontradicted opinion testimony is not conclusive if it is intrinsically unpersuasive.").

In other vaccine cases, Dr. Geier's testimony has similarly been accorded no weight: Thompson v. Secretary of HHS, No. 99-0436, 2003 WL 221439672 (Fed. Cl. Spec. Mstr. May 23, 2003); Bruesewitz v. Secretary of HHS, No. 95-0266, 2002 WL 31965744 (Fed. Cl. Spec. Mstr. Dec. 20, 2002); Raj v. Secretary of HHS, No. 96-0294V, 2001 WL 963984, *12 (Fed. Cl. Spec. Mstr. July 31, 2001); Haim v. Secretary of HHS, No. 90-1031V, 1993 WL 346392 (Fed. Cl. Spec. Mstr. Aug. 27, 1993) ("Dr Geier's testimony is not reliable, or grounded in scientific methodology and procedure. His testimony is merely subjective belief and unsupported speculation."); Marascalco v. Secretary of HHS, No. 90-1571V, 1993 WL 277095 (Fed. Cl. Spec. Mstr. July 9, 1993) (where the special master described Dr. Geier's testimony as intellectually dishonest); Einspahr v. Secretary of HHS, No. 90-923V, 1992 WL 336396 (Cl. Ct.

4

Spec. Mstr. Oct. 28, 1992), aff'd, 17 F.3d 1444 (Fed. Cir. 1994); Aldridge v. Secretary of HHS, No. 90-2475V, 1992 WL 153770 (Cl. Ct. Spec. Mstr. June 11, 1992); Ormechea v. Secretary of HHS, No. 90-1683V, 1992 WL 151816 (Cl. Ct. Spec. Mstr. June 10, 1992) ("Because Dr. Geier has made a profession of testifying in matters to which his professional background (obstetrics, genetics) is unrelated, his testimony is of limited value to the court."); Daly v. Secretary of HHS, No. 90-590V, 1991 WL 15473 (Cl. Ct. Spec. Mstr. July 26, 1991) ("The court is inclined not to allow Dr. Geier to testify before it on issues of Table injuries. Dr. Geier clearly lacks the expertise to evaluate the symptomatology of the Table injuries and render an opinion thereon.").

Petitioners may proceed in this case on their alternate allegations, a Table measles infection and causation in fact autism from either MMR or thimerosal-containing vaccines. Their allegation of a Table encephalopathy is hereby **DISMISSED** for failure to prove a prima facie case of an acute encephalopathy occurring within 5-15 days of Christopher's MMR vaccination.

**IT IS SO ORDERED.**

Oct. 9, 2003
DATE

Laura D. Millman
Laura D. Millman
Special Master