UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID GEIER AND MARK GEIER**<br>14 Redgate Court<br>Silver Spring, MD  20905<br><br>*Plaintiffs*,<br><br>vs.<br><br>**Dept. of Health and Human Services**<br>200 Independence Avenue, SW<br>Washington, DC  20201<br><br>**Dr. Sarah K. Parker and**<br>**Dr. James Todd**<br>Childrens' Hospital, Dept. of Pediatrics<br>1056 East 19th Avenue<br>Denver, CO  80218<br><br>**Dr. Benjamin Schwartz and**<br>**Dr. Larry Pickering**<br>c/o National Vaccine Program Office<br>Dept. of Health and Human Services<br>200 Independence Avenue, SW #725<br>Washington, DC  20201<br><br>And<br><br>**The American Academy of Pediatrics**<br>601 13th Street, NW, Suite 400 – North<br>Washington, DC  20005<br><br>*Defendants*. | Plaintiffs' Opposition to Defendant Parker and Todd's Motion to Dismiss for Lack of Personal Jurisdiction<br><br><br>Case No. 1:05CV01749<br><br>Judge Thomas Hogan |

I.    **Introduction.**

    The Geiers allege that Defendants defamed them (and interfered with contractual and prospective business relations) by claiming in a published article that they fabricated research results. Two of the Defendants, Dr. Parker and Dr. Todd, move to dismiss claiming that this Court lacks jurisdiction under D.C.'s "long-arm" statute. The motion should be denied because they have sufficient minimum contacts with this jurisdiction to satisfy Due Process. Specifically, by accusing the Geiers of science fraud, they attacked their qualifications to serve as experts in an omnibus proceeding in the Court of Federal Claims which must answer the question whether, beginning around 1990, increasingly high levels of mercury used as a preservative in childhood vaccines damaged the brain and immune system often leading to a diagnosis of autism.

    Washington, DC is the epicenter of one of the most controversial, important and far-reaching scientific and legal struggles in U.S. history: whether mercury in vaccines approved by FDA and mandated by CDC damage the developing brains and immune systems of children causing symptoms often diagnosed as autism. Gathered in this city – under the dictate of federal law – are more than 4,600 families whose children spiraled into autism being injected with mercury-laced vaccines. *In Re Claims For Vaccine Injuries Resulting In Autism Spectrum Disorder Or A Similar Neurodevelopmental Disorder Various Petitioners, V.*

*Secretary Of Health And Human Services*, 2002 WL 31696785 (Fed. Cl., July 3, 2002) ("Autism Proceedings") (Exhibit 1).  The issue thrust upon the United States Court of Federal Claims ("vaccine court" or "Federal Claims Court") in this jurisdiction is whether the mercury that the pharmaceutical companies added to their vaccines as a preservative poisoned thousands of children and caused them to exhibit symptoms of autism.

    The mercury/vaccine issue has caused a bitter and soul-searching debate within the public health and scientific communities.  If, in fact, mercury poisoning has caused brain and immune system damage in children injected with mercury-laced vaccines, the pediatricians such as Dr. Sarah Parker and Dr. James K. Todd; public health officials such as Dr. Benjamin Schwartz and Larry Pickering; and public health organizations such as The Center for Disease Control ("CDC") and the American Academy of Pediatrics ("AAP") – all of whom have advocated aggressive vaccine protocols for children and claimed that the mercury used in vaccinations was safe -- might well have been instruments of harm to an entire generation of children.  Moreover, the pharmaceutical companies might well be subject to billions of dollars in damages for lacing their vaccines with this toxic preservative notwithstanding evidence that it would cause profound neurological and immune system damage, and thus have an interest in blocking a "causation" finding in vaccine court by denying petitioners their experts, e.g., the Geiers.  *See*

42 U.S.C. § 300aa-21 (election to reject a win or loss in vaccine court and pursue ordinary civil remedies in state or federal court).  Such civil liability could have profound effects on the flow of capital that is infused into such research hospitals such as the University of Colorado Health Science Center where Drs. Todd and Parker are employed (See Exhibit 2 for the publicly disclosed funding that is received by the University of Colorado's Pediatric Division).  Thus, Drs. Parker and Todd have a considerable interest in the outcome of the proceedings before the Federal Claims Court.

　　　Drs. Parker and Todd purposefully entered this fiercely contested legal environment and subjected themselves to being haled into court in this city when they defamed the scholarship of two important sources of expertise to the Federal Claims Court about the relationship between mercury poisoning and the manifestation of autism: Mark and David Geier.  The Geiers' research has gathered important evidence that injecting mercury into children does, in fact, cause neurological and immune system damage diagnosed as autism.  As is maintained in the Complaint, Defendants David and Mark Geier are well-known experts in the field of vaccine injury.  The article that is the basis for this lawsuit was intended by its authors to be used at least in part to prevent the Geiers from serving as experts in vaccine court.  See, e.g., Motion to Exclude the Testimony of Petitioner's Expert, Mark R. Geier, M.D., *Nan Conlon v. Secretary of HHS*, No. 02-1133V at

- 4 -

21-22 (citing Parker, et al, article for the proposition that "Dr. Geier's analysis and methodologies have been considered and rejected as lacking validation in those relevant medical and scientific communities" and attaching the defamatory article as an exhibit to the motion to Exclude.) (Exhibit 3).  Having attempted to subvert the fact-finding process of the Autism Proceedings in this city by defaming Mark and David Geier, Drs. Parker and Todd now seek refuge shelter in their home state of Colorado.  Such hit and run tactics are antithetical to traditional notions of fair play and substantial justice.  Requiring them to answer the defamation allegations in this Court does not offend Due Process because they voluntarily chose to participate in this maelstrom focused in D.C.  Accordingly, the Motion to Dismiss by Drs. Todd and Parker should be dismissed.

II.   **Drs. Parker and Todd Could Anticipate Being Haled Into Court in Washington, D.C.**

Congress has decided that all cases alleging vaccine injury should be heard, not in the individual cities and states where the victims of vaccine injury live, but here in Washington, D.C.  *See* 42 U.S.C. § 300aa-10 *et seq*. (Vaccine Injury Compensation Act).  The federal judiciary has decided that parents of children damaged from the mercury added to vaccines must travel to Washington, D.C. to have their claim for damage heard by the Federal Claims Court.  *See Owens v. American Home Products Corp.,* 2002 WL 992094 (S.D.Tex. May 7, 2002) (Exhibit 4).  As a consequence of the *Owens* and other decisions designating the

Federal Claims Court in Washington, D.C. as the exclusive forum for adjudicating mercury/vaccine poisoning claims, this city has been inundated with such cases.

To more efficiently process this large volume of cases, "Autism General Order #1" was issued by Chief Special Master Golkiewicz. *In Re Claims for Vaccine Injury, supra.* Pursuant to this Order, the Federal Claims Court employed a two-step procedure. First, the Federal Claims Court is to inquire as to general causation issues *i.e.*, whether the mercury contained in vaccines can cause autism and/or similar disorders. Second, the conclusions reached in that general inquiry are to be applied to individual claims of injury by mercury. Pursuant to this "Omnibus Autism Proceeding," the Federal Claims Court established an "Autism Master File" to constitute an evidentiary record with respect to the general causation issues. All evidence relevant to the general causation issues are to be placed into that file.

It is into this dispute that Drs. Parker and Todd directed their defamatory attack on the Geiers. Drs. Todd and Parker's defamatory writings are being used as a sword by HHS in Washington, D.C. to defeat the claims that mercury-laced vaccines have caused billions of dollars in damages to children – as Drs. Todd and Parker anticipated it would. See, e.g., *Nan Conlon v. Secretary of HHS*, *supra*. HHS is the nominal defendant in vaccine court, even though families dissatisfied with its judgment, or unreasonable delays, may pursue ordinary civil remedies in

state and federal court against vaccine companies, providers, etc. Dr. Parker (75% of her time is spent on research largely funded by Defendant HHS, Parker Dcl. at ¶ 2, and who came to D.C. to present the results of her research, Parker Dcl. at ¶¶ 18-19, codified in the article that defamed the Geiers) and Dr. Todd aimed their attack on the Geiers directly at this forum.

### III. Courts Found in Washington, DC – Including This Court – Have Jurisdiction Over Drs. Todd and Parker.

The D.C. long-arm statute provides, "[a] District of Columbia court may exercise personal jurisdiction over a person . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a). This "transacting any business" prong of the long-arm statute "is coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C.) (en banc), *cert. denied,* 530 U.S. 1270 (2000). The due process analysis requires that the court examine the "quality and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental." *Id.* The key question is whether the nonresident defendant's contacts "with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The D.C. Courts have analyzed jurisdiction in defamation cases as coextensive with the outer limits of Due Process. See*, e.g.,*

*McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (citing § 13-423(a)(1)), *cert. denied*, 519 U.S. 806 (1996); *LaPointe v. Van Note*, 2004 WL 3609346 at *4 (D.D,C. May 9, 2004) (attached to Defendants' Motion).

In jurisdictions such as this whose long-arm statutes are coextensive with the Due Process Clause, *Mouzavires v. Baxter*, 434 A.2d 988, *992 (D.C., 1981), the issue of personal jurisdiction is decided, ultimately, on one simple question. The question is whether acts of a Defendant are such that that he or she could reasonably anticipate being haled into a court in the jurisdiction under consideration. *Arista Records, Inc. v. Sakefield Holding Co., SL*, 314 F.Supp.2d 27, 30 (Dist. D.C. 2004), *citing*, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The relevant question in this case is as follows: given that Washington, D.C. has been vested with near exclusive jurisdiction for hearing claims that mercury poisoning from vaccination has caused autism, and given that the Defendants made defamatory statements about the Plaintiffs to influence the disposition of these mercury poisoning claims, was it reasonably foreseeable for Defendants to anticipate being haled into court here in the District of Columbia? The answer is an absolute, and unequivocal "yes."

A critical inquiry in determining whether Drs. Todd and Parker have the "minimum contacts" necessary to justify haling him or her into a court in this city is whether Drs. Todd and Parker have "purposefully directed [their] activities at

residents of the forum." *Shoppers Food Warehouse v. Moreno*, *supra*, 746 A.2d at 331.  By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign" *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen v. Woodson*, *supra*, 444 U.S. at 296.

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 789 (1984).  The minimum contacts analysis "does not constitute a 'mechanical test" in which a court is to apply "talismanic jurisdictional formulas" to determine whether personal jurisdiction exists over a particular defendant.  *Burger King v. Rudzewicz,* 471 U.S. 462, 471-72, 105 (1985).  Rather, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Id.* at 485-86 (citations and alteration omitted); *Shoppers Food Warehouse, supra*, 746 A.2d at 328.

The *Calder* analysis is controlling in this case.  The Court held that the California courts could exercise personal jurisdiction over Florida authors even though they had no "direct" contacts with California:

> The allegedly libelous story concerned the California activities of a
> California resident. It impugned the professionalism of an entertainer

- 9 -

>whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioner is therefore proper in California based on the "effects" of their Florida conduct in California. . . . An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

465 U.S. at 788-89.

    A.    <u>Dr. Parker's Visit to the District of Columbia for the Purpose of Attacking the Geiers Subjected Her to the Jurisdiction of this City's Courts</u>.

A single act by defendant in the jurisdiction can be sufficient to constitute "transacting business," and thereby confer jurisdiction. *See Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C.App.1981) (en banc).

Dr. Parker's affidavit submitted in support of her motion to dismiss undermines her attempt to seek shelter from the power of the courts that are found in this city. Ms. Parker admits traveling to Washington, DC from March 21-24, 2005 for the purpose of attending the "National Immunization Conference." Parker Affidavit at ¶ 18. A copy of Dr. Parker's PowerPoint presentation at that conference is available, still, on a CDC website http://cdc.confex.com/cdc/nic2005/techprogram/paper_8727.htm). See Exhibit 5. Dr. Parker's presentation in March focused exclusively on representing the findings of the defamatory article that is the subject of this lawsuit and, possibly, continuing her attack upon the Geiers. At

the end of her presentation, Dr. Parker concluded that "Well designed epidemiologic studies do not support an association between thimerosal and autism," implying to an audience of the Geiers' peers that the Geiers' study was not "well designed." Dr. Parker's affidavit implies that she did repeat her defamatory statements about the Geiers during her visit, Parker Affidavit at ¶ 19. Yet, neither the Court or the Plaintiffs are required to take such assurances at face value. Prior to the Court relying on such exculpatory statements by Dr. Parker, the Plaintiffs should be allowed the opportunity to conduct discovery to ascertain the content of her statements.

Given the fact that Dr. Parker voluntarily traveled to Washington, D.C. for the purpose of attacking the Geiers' professionalism, it simply cannot be said that haling her into a District of Columbia court is so unfair as to constitute a violation of Due Process.

> B. Dr. Todd's Attempt to Influence the Autism Proceedings in Washington, D.C. Subjects Him to the Jurisdiction of Washington, D.C.

Dr. Todd's attempt to seek refuge in Colorado fares no better than Dr. Parker's. Having directed defamatory remarks at the District of Columbia, and his coauthor having traveled to Washington, DC to defend his paper and further Dr. Todd's campaign against those correlating neurologic and immunologic damage to the mercury contained in vaccine, Dr. Todd would certainly expect to be haled into

- 11 -

court in the District of Columbia.

Although "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum," *Burger King,* 471 U.S. 462, 474 (1985); *Mwani v. bin Laden*, 417 F.3d 1, 12-13 (D.C. Cir. 2005), the foreseeability of causing injury in the forum can establish such contacts where "the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there." *Burger King, supra.* "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum." *Burger King* at 477; *Mwani, supra.* Rather, "so long as an actor's efforts are 'purposefully directed' toward residents of another forum, the Supreme Court has consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Mwani, supra*; *see also Burger King* at 476; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 134, 1349 (D.C. Cir. 2000) (noting that "jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state."). In this case, there is no doubt that Defendants engaged in malignant actions directed at the Federal Claims Court and felt in Washington, DC.

The cases cited by Drs. Todd and Parker in support of their motion to dismiss are deficient in that they fail to acknowledge the importance of

- 12 -

Washington, D.C. to the Geiers or to the legal/liability question of whether mercury exposure has caused autism. More importantly, those cases are bereft of facts going to Defendants directing their defamatory statements at the residents of the forum court. Such directed activity is particularly important where, as here, a forum has a significant interest a libel action brought by nonresident plaintiffs because, inter alia, false statements of fact "harm both the subject of the falsehood and the readers of the statement, and a state may rightly employ its libel laws to discourage the deception of its citizens". *Keeton*, *supra*, at 776.

    In this case, the Geiers have been subject to attack by HHS and HHS's allies Drs. Parker and Todd. First, HHS is a direct litigant in the Autism Proceedings, fighting the claims of thousands of parents that their children were pushed into autism through mercury poisoning caused by vaccines. In those proceedings, HHS seeks to have Mark and David Geier excluded as expert witnesses because their testimony concerning the relationship between mercury poisoning from vaccines and the onset of autism is damaging to HHS's defense. The interest that the District of Columbia has in protecting readers of Drs. Parker and Todd's statements about the Geiers is paramount considering the dual attack on the Geiers taking place in the Federal Claims Court.

    c.    <u>The Cases Cited by Todd and Parker are Inapposite.</u>

The cases cited by Defendants Todd and Parker in support of their motion to dismiss are inapposite because their factual and legal contexts do not demonstrate the same interest of the forum state present in this case.

In *LaPointe v. Van Note*, 2004 WL 3609346 at *6-7 (D.D.C. Nov. 9, 2004), former United Nations official Eugene LaPointe sued activists authors for liable in Washington, D.C. for a campaign waged against him in New York to have him removed from his New York-based U.N. post as Secretary General of the Secretariat on the Convention of International Trade in Endangered Species of Fauna and Flora. This Court dismissed the case for lack of jurisdiction in Washington, D.C. The *LaPointe* analysis clearly misses the mark with respect to the facts implicated in the Geier Complaint because in *LaPointe* New York was the jurisdiction where the libelous statements were directed and were sought to have the greatest impact and effect. Here, the Geiers seek to bring suit against Defendants in the only jurisdiction that has an overwhelming interest in the issue of mercury poisoning from vaccines and the jurisdiction that Defendants intended their attack on the Geiers to have the greatest effect: Washington, DC.

Similarly, *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1196) and *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C.Cir.1986) lack the unique fact present in this case, *i.e.*, the centrality of Washington, D.C. as the focal point of the resolution of the mercury/autism issue and the particularly

damaging impact and effect that Defendants Parker and Todd's statements will have on the Geiers in Washington, D.C.

### IV. Limited Discovery of Jurisdictional Facts Would be Appropriate Should the Court Have Doubts about Whether Defendants Todd and Parker Could Reasonably Anticipate being Haled into a D.C. Court.

Should there exist any doubts about whether Drs. Todd and Parker reasonably anticipated being haled into and subject to the jurisdiction of a District of Columbia Court, this Court has the authority to order discovery on such matters, and should stay resolution of this motion pending completion of such very limited discovery.

Respectfully Submitted,

/s/ James A. Moody

_____

James A. Moody, Esq.
1130 30th Street, NW
Suite 300
Washington, DC  20007
202-298-4766

Joseph Hennessey
P.O. Box 31256
Bethesda, MD  20824-1256
301-654-0341

*Attorneys for Plaintiffs*

December 12, 2005

## CERTIFICATE OF SERVICE

I, Joseph Hennessey certify that on Monday, December 12, 2005, a copy of Plaintiffs' Opposition to Defendant Parker and Todd's Motion to Dismiss for Lack of Personal Jurisdiction was served by the United States District Court's Electronic Filing System on the below listed parties:

**Jay Ward Brown, Esq.**
**Adam J. Rappaport, Esq.**
Levine Sullivan Koch & Schultz, LLP
1050 Seventeenth Street, NW, Suite 800
Washington, DC  20036

**Alan Burch, Esq.**
55 Fourth Street, NW
Washington, DC  2-530

**Erica H. Perkins, Esq.**
**Edward J. Longosz, Esq.**
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, NW, Suite 1200
Washington, DC  20006

**Patrick T. O'Rouke, Esq.**
University of Colorado
1380 Lawrence Street, Suite 1325
Denver, CO  80204

Joseph Hennessey
P.O. Box 31256
Bethesda, MD  20824-1256