## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARK GEIER and DAVID GEIER | ) |
| | ) Case No. 1:05CV01749 |
| Plaintiffs, | )  Judge Thomas F. Hogan |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HEALTH AND HUMAN | ) |
| SERVICES, et. al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS PARKER AND TODD'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants Parker and Todd respectfully submit their Reply Brief in support of their Motion to Dismiss.  Dr. Parker and Dr. Todd will demonstrate that Plaintiffs Mark Geier and David Geier failed to establish that the Court may exercise personal jurisdiction over them.

### Introduction

The argument that the Geiers make in support of personal jurisdiction over Dr. Parker and Dr. Todd is that they might reasonably anticipate being haled into the District of Columbia after writing an article for a medical journal with a national circulation.  They cite no law supporting such a broad interpretation of the District of Columbia's long-arm statute, which specifically limits the Court's jurisdiction to those instances where a claims arises from: (1) a person's "transacting any business <u>in</u> the District of Columbia"; (2) or "causing tortious

injury in the District of Columbia by an act or omission <u>in</u> the District of Columbia." *D.C. Code §13-423(a)(1)* (emphasis added)*; D.C. Code §13-423(a)(3)* (emphasis added)*.*

The Geiers generated no evidence that Dr. Parker or Dr. Todd entered any contracts in the District, performed any research in the District, sent drafts of the article to the District, or even that they had any communication with any resident in the District about the drafting and publication of the article. Dr. Parker and Dr. Todd were not compensated for their efforts to bring the article to publication. Neither physician transacted any "business <u>in</u> the District of Columbia" that could give rise to personal jurisdiction. *D.C. Code §13-423(a)(1)* (emphasis added).

Similarly, the Geiers generated no evidence that Dr. Parker or Dr. Todd engaged in any tortious conduct in the District of Columbia. Although the Geiers argue that Dr. Parker and Dr. Todd somehow injected themselves into a controversy being litigated before the U.S. Court of Federal Claims, they present no evidence that either physician engaged in any tortious conduct in the District. Under the plain language of the long-arm statute, personal jurisdiction does not exist unless the tortfeasor performs "an act or omission <u>in</u> the District of Columbia." *D.C. Code §13-423(a)(3)* (emphasis added).

**Discussion**

I.    *The Geiers Cannot Create Personal Jurisdiction Through Irrelevant Assertions about the Court of Federal Claims' Jurisdiction*

2

The Geiers' rarely discuss whether Dr. Parker or Dr. Todd transacted any business or committed a tortious act in the District of Columbia.  Instead, their premise is that the Court should find personal jurisdiction because Washington, D.C. is the "epicenter" of litigation addressing whether certain vaccines caused children to suffer from autism.

The first flaw in the Geiers' arguments is that rely mainly upon unsupported conclusions about Dr. Parker's and Dr. Todd's motivations.  Stating that Dr. Parker and Dr. Todd published their article "to prevent the Geiers from serving as experts in vaccine court," does not answer the question of whether either Dr. Parker or Dr. Todd had sufficient contacts with the District of Columbia to subject them to the Court's jurisdiction.  "Conclusory statements" do not satisfy the Geiers' burden of alleging "specific facts" that give rise to personal jurisdiction.  *Brunson v. Kalil & Company, Inc.*, 2005 WL 3211733 at *3. (D.D.C. 2005) (emphasis added).[1]

The second flaw in the Geiers' argument is that they invite the Court to speculate about events that have not yet transpired in the Court of Federal Claims. For example, the Geiers claim that Dr. Parker and Dr. Todd have a "considerable interest" in the proceedings before the Court of Federal Claims because the "billions of dollars in damages" that might someday be awarded against vaccine manufacturers "could have profound effects on the flow of capital that is infused

---

[1]     *Brunson* was released on November 18, 2005 and has not yet been incorporated into the Federal Supplement.  Because *Brunson* addresses many of the issues raised by the Motion to Dismiss, Dr. Parker and Dr. Todd have attached it as Exhibit A for the Court's consideration.

into research hospitals."  No evidence suggests that either Dr. Parker or Dr. Todd receive any compensation for publishing the article, let alone any compensation that would depend upon the outcome of the vaccine litigation.  "Bald speculation" about the research that pharmaceutical manufactures may fund in the future is an insufficient basis to establish personal jurisdiction, particularly when the speculation would not establish that either Dr. Parker or Dr. Todd has any contacts with the District of Columbia.  *Jungquist v. Sheik Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997).

What the Geiers also overlook is that this lawsuit will not answer the question of whether thimerosal causes autism.  Nor will it answer the question of whether the Geiers might appropriately serve as experts before the Court of Federal Claims.  Those questions are currently pending before the Court of Federal Claims.  The Court should decline the invitation to resolve the issue of whether the Dr. Parker's and Dr. Todd's article will impair the Geiers' ability to serve as experts in those proceedings.

Perhaps the Geiers' invitation would be more appropriate if there was any evidence that Dr. Parker and Dr. Todd came to Washington, D.C. to challenge their Geiers' ability to serve as expert witnesses before the Court of Federal Claims, or even if they had submitted affidavits to the challenging the Geiers' qualifications to serve as experts, but there is no such evidence.  Instead, the only connection the Geiers allege between the Court of Federal Claims and Dr. Parker or Dr. Todd is that the Secretary of Health and Human Services cited their article

in a single motion seeking to exclude Dr. Mark Geiers' testimony in *Nan Conlon v. Secretary of HHS*.  The Geiers have not alleged, nor is there any evidence, that Dr. Parker or Dr. Todd authorized anyone to cite their article.

What is most striking about the *Conlon* motion is not that it cited Dr. Parker's and Dr. Todd's article, but it is the fact that the sole citation has <u>nothing</u> to do with the statements that the Geiers describe as defamatory.  Contrary to the Geiers' assertions, the *Conlon* motion does not claim that the Geiers "fabricated data" when publishing their research, but instead cites the article only for the contention that research stemming from the VAERS database is unreliable and subject to misinterpretation.

Other than two sentences on Page 22, the *Conlon* motion does not rely upon Dr. Parker's and Dr. Todd's article to challenge Dr. Geier's testimony.  The remaining 24 pages rely upon *Daubert v. Merrill Dow Pharmaceutical's* framework for evaluating whether Dr. Geier's expert testimony is sufficiently grounded in scientific principles to be admitted at trial.  The Court of Federal Claims is well-situated to make this determination, and the Geiers have not demonstrated why the Court should allow an ordinary evidentiary dispute to serve as a basis for personal jurisdiction over Dr. Parker or Dr. Todd.

Because neither Dr. Parker nor Dr. Todd has any independent connection to the vaccine litigation, the Geiers' own interest in appearing as experts before the Court of Federal Claims is not a sufficient reason for the Court to assert personal jurisdiction.  As the United States Court of Appeals for the District of Columbia

observed, "A plaintiff may not . . . depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws." *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995).

Moreover, the fact that the Court of Federal Claims is located in the District of Columbia cannot vest personal jurisdiction in this Court without any evidence that Dr. Parker or Dr. Todd have sufficient contacts to satisfy the long-arm statute. Courts in the District of Columbia have long recognized that "to permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Ferrara*, 54 F.3d at 831.

Understandably, the Geiers may be reluctant to address Dr. Geier's qualifications in the Court of Federal Claims because of past decisions in which he was found to be "not a candid witness" and his testimony was found to be "seriously intellectually dishonest." *Houtz v. Secretary of Health and Human Services*, 1996 WL 734676, *9 (Fed. Cl. Spec. Mstr. Dec. 5, 1996); *Marascalco v. Secretary of Health and Human Services*, 1993 WL 277095, *5 (Fed. Cl. Spec. Mstr. July 9, 1993). His voluntary decision to serve as an expert witness before that tribunal, however, does not serve as a basis for the Court to assert personal jurisdiction over Dr. Parker or Dr. Todd.

II.    *The Court Does Not Possess General Jurisdiction Over Dr. Parker or Dr. Todd*

A court may exercise general jurisdiction over a defendant pursuant to *D.C. Code § 13-422*.  The Geiers do not argue that this statute provides a basis for the Court exercises jurisdiction over Drs. Parker and Todd.  Nor could they, as neither Dr. Parker nor Dr. Todd is a "person domiciled in, organized under the laws of, or maintaining his or its principal place of business in the District of Columbia…" *D.C. Code § 13-422*.

III.    *Dr. Parker and Dr. Todd Did Not Transact Any Business in the District of Columbia*

Because the Court does not possess general jurisdiction over Dr. Parker or Dr. Todd, it may exercise personal jurisdiction only under the District of Columbia's long-arm statute.  The Geiers blur the statutory requirements, but it appears that their primary argument is that the Court possesses jurisdiction under *D.C. Code §13-423(a)(1)*.  This provision allows a court to assert personal jurisdiction arising from a person's "transacting any business in the District of Columbia."

The Geiers correctly assert that the "transacting any business" provision of the long-arm statute is generally considered to be coextensive with the personal jurisdiction allowed under the due process clause of the United States Constitution.  *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000).  What they neglect to analyze, however, is whether Dr. Parker or Dr. Todd actually transacted any business to bring their conduct within the ambit of *D.C.*

*Code §13-423(a)(1)*.  By skipping this analysis, the Geiers ask the Court to assert jurisdiction in a manner that the long-arm statute does not recognize.

Less than two months ago, the United States District Court for the District of Columbia extensively discussed the long-arm statute in *Brunson v. Kalil & Company*.  Rather than adopting the Geiers' analysis, which focuses exclusively on the due process requirements, *Brunson* explains that a court considering the "transacting any business" provision must examine: (1) whether the defendant transacted any business in the District of Columbia; (2) whether the plaintiff's claim arose from the business transacted in the District of Columbia; and (3) if both of the other provisions of the statute are met, whether the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.  *Brunson*, 2005 WL 3211733 at *4.

A.    Dr. Parker and Dr. Todd Did Not Transact any Business in the District of Columbia

Turning first to the question of whether Dr. Parker or Dr. Todd transacted any business in the District of Columbia, the courts have held that the phrase "transacting any business" encompasses "those contractual activities of a nonresident defendant which cause a consequence in the District."  *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd.*, 15 F.Supp.2d 47, 51 (D.D.C. 1998).  Even the primary case that the Geiers cite in their brief recognizes that "it is now well-settled" that the "transacting any business"

provision embraces the "contractual activities of a nonresident defendant. . ." *Mouzavires v. Baxter*, 434 A.2d 998, 992 (D.C. 1981). Where a party has not negotiated, formed, or performed a contract in the District, the "transacting any business" provision does not apply. *Brunson*, 2005 WL 3211733 at *5.

*Overseas Partners* provides a good example of the types of conduct that will give rise to jurisdiction under the "transacting any business" provision of the long-arm statute. In that case, personal jurisdiction existed over a company that repeatedly solicited the business of a District resident, traveled to the District to discuss the contract, negotiated the terms of the contract in the District, and agreed to perform many of its contractual duties within the District. *Overseas Partners*, 15 F.Supp.2d at 51. Under those circumstances, the defendant could truly have been said to have purposely availed itself of the District's laws and jurisdiction.

In contrast, *Brunson* determined that a company should not be considered as "transacting any business" when it engages in only cursory conduct, such as making preliminary telephone calls to a potential buyer in the District, mailing letters into the District, and even hiring an attorney in the District to represent its interests in potential transaction . *Brunson*, 2005 WL 3211733 at *10. The court determined that "isolated and brief" incidents cannot truly be considered the transacting of business within the scope of *D.C. Code §13-423(a)(1).*

Much like the plaintiff in *Brunson,* the Geiers provide no evidence that Dr. Parker or Dr. Todd entered a contract with any District of Columbia resident, negotiated a contract to write their article in the District, contacted any person in

the District while writing the article, performed any research in the District, or fulfilled any contractual duties in the District attendant to writing their article.  The Geiers do not claim that Dr. Parker or Dr. Todd received any mail in the District, opened an office in the District, maintained a telephone number in the District, or employed any agents in the District.

Not only have the Geiers failed to establish any contractual relationship with the District of Columbia, but they fail to establish even that Dr. Parker or Dr. Todd engaged in any commercial or business activities relevant to this lawsuit. Both physicians maintain full-time medical practices in Colorado and neither were compensated for researching and writing the article.   There is simply no evidence to fulfill *D.C. Code §13-423(a)(1)* jurisdictional requirement of "transacting any business <u>in</u> the District of Columbia."

 B. <u>The Geiers' Claim Did Not Arise From Business Transacted in the District of Columbia</u>

Even if Dr. Parker or Dr. Todd transacted business in the District, that alone would not be a sufficient basis for the Court to assert personal jurisdiction. Instead, the Geiers' claim must arise from the specific business transaction that is the subject of their lawsuit. *Brunson*, 2005 WL 3211733 at *5-6.  The long-arm statute itself limits the scope of the Court's inquiry by stating, "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *D.C. Code §13-423(b)*.

Because of this limitation, unless a court could find that a party's business contacts were sufficient to create general jurisdiction, a court may not consider a party's unrelated business transactions in the District as a basis for asserting jurisdiction under the long-arm statute. Thus, for example, *Brunson* addressed a broker's claim for compensation under a Brokerage Agreement. As a basis for personal jurisdiction, she asked the court to rely upon the fact that the defendant attended a closing in the District that related her services as a broker. Rather than adopting this theory, however, the court looked only at the conduct giving rise to the brokerage relationship between the parties:

> In her Opposition, [the broker] states that the closing of the sale in Washington, D.C. is the "central event of the case." The closing, however, occurred pursuant to the Purchase Agreement, not the Brokerage Agreement. By characterizing the closing to be the central event in the case, Plaintiff is asking the Court to analyze the Purchase Agreement, not the Brokerage Agreement. Plaintiff cannot have it both ways. The Court refuses to find that actions related to the Purchase Agreement gave rise to this claim, which Plaintiff ostensibly brought pursuant to the Brokerage Agreement.

*Brunson*, 2005 WL 3211733 at *10 (internal citations omitted).

Although the Geiers never defined the business transaction that supposedly occurred in the District of Columbia, the only tortious act they allege in this lawsuit is Dr. Parker's and Dr. Todd's authorship of the article in PEDIATRICS. The Geiers have not generated any evidence that Dr. Parker or Dr. Todd transacted any business in the District of Columbia when bringing the article to publication.

They have not generated any evidence that the article was conceived, researched, written, edited, printed, or mailed in the District of Columbia.

Instead, the Geiers argue that Dr. Parker became subject to the Court's jurisdiction when she spoke at a conference in the District of Columbia in March of 2005, at which she allegedly "focused exclusively on representing the findings of the defamatory article that is the subject of this lawsuit and, possibly, continuing her attack upon the Geiers."  Much like the plaintiff in *Brunson*, who relied upon a specific agreement as the basis for her claim, the Geiers rely entirely upon the published article as the basis for their lawsuit.  Consequently, personal jurisdiction must arise from acts in the District when the article was created and published, not from remarks at a conference that occurred six months later.

Because the publication of the article was a separate event from Dr. Parker's one-hour presentation, her attendance at the National Immunization Conference should not provide a basis for the Court to assert personal jurisdiction. Yet if the Court had any question about it, the Geiers also failed to establish that Dr. Parker was "transacting business in the District of Columbia" when she attended the conference.  Dr. Parker did not provide any patient care while in the District, did not bill for services rendered in the District, did not negotiate or enter any contracts in the District, and was not paid for her attendance.

C.    The Geiers' Argument is Inconsistent with Due Process

Only if the Court finds that Dr. Parker and Dr. Todd were "transacting any business in the District of Columbia" must it address the question of whether

12

asserting personal jurisdiction is consistent with the due process clause of the United States Constitution. When answering this question, the "constitutional touchstone of the due process requirement is whether the defendant purposely established minimum contacts in the forum state." *Asahi Metal Industrial Company v. Superior Court of California*, 480 U.S. 102, 108-09 (1987).

Traditionally, personal jurisdiction does not exist unless a party "purposely avails" itself of the benefits and protections of the forum's laws, thus making it foreseeable that it will be "haled into court." *Brunson*, 2005 WL 3211733 at *14. The Geiers suggest that Dr. Parker and Dr. Todd should have anticipated being haled into Court when they wrote an article that would have an effect upon the vaccine litigation before the Court of Federal Claims. What they have not shown, however, is that either Dr. Parker or Dr. Todd purposely availed themselves of the District of Columbia's laws when they wrote their article.

Personal jurisdiction exists when a party "purposely establishe[s] minimum contacts in the forum state." *Asahi*, 480 U.S. at 108-09. The Geiers have not established, other than by making conclusory statements, that Dr. Parker and Dr. Todd established any contacts in the District, let alone contacts that would lead them to anticipate a lawsuit. As *Brunson* correctly notes, however, a naked assertion that jurisdiction exists cannot "relieve the Plaintiff of [its] duty to prove the elements of personal jurisdiction with non-conclusory factual statements." *Brunson*, 2005 WL 3211733 at *14.

The Geiers also suggest that the Court can fairly assert personal jurisdiction because of the pending litigation before the Federal Court of Claims, but all the Geiers have demonstrated is that a single litigant in a single case sought to exclude Dr. Geier's potential testimony.  The attorney representing Ms. Conlon, and presumably an attorney representing Dr. Geier if he chose to retain one, certainly can file briefs in the Federal Court of Claims defending Dr. Geier and highlighting the areas in which they believe Dr. Parker and Dr. Todd misstated Dr. Geiers' research.  Because the Federal Court of Claims may easily resolve this dispute, the Court may decline to assert personal jurisdiction because there already exists a means of providing "convenient and effective relief" to the Geiers while also furthering "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *World-Wide Volkswagen Corporation v. Wooden*, 444 U.S. 286, 292 (1980).

IV.    *Dr. Parker and Dr. Todd Did Not Engage in Any Tortious Conduct in the District of Columbia*

As an additional jurisdictional basis, the Geiers suggest that Dr. Parker and Dr. Todd engaged in tortious conduct that should subject them to the Court's jurisdiction.  In making this argument, the Geiers again rely exclusively upon the alleged effects of the allegedly defamatory statements upon the proceedings in the Federal Court of Claims.

Looking beyond the issue of whether the Geiers have standing to assert an interest on behalf of the litigants before the Federal Court of Claims, their

argument cannot succeed because it is inconsistent with the long-arm statute.  *D.C. Code §13-423(a)(3)* allows for personal jurisdiction only when a tortfeasor has performed "an act or omission <u>in</u> the District of Columbia." (emphasis added).

As Dr. Parker and Dr. Todd described in their original motion, Congress made an intentional choice to separate "acts" from "injuries" when it passed *D.C. Code §13-423(a)(3). Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217, 220-21 (D.C. Cir. 1986).  The Geiers argue only that an injury occurred in the District and have not demonstrated any tortious acts or omissions within this jurisdiction.

The primary authority that the Geiers cite in support of their argument is *Calder v. Jones*, 465 U.S. 783, 789 (1984).  Although the Geiers state that "the *Calder* analysis is controlling in this case," they could not be further from the mark.  In *Calder*, the United States Supreme Court considered whether personal jurisdiction existed under a California statute that allowed for the exercise of jurisdiction "on any basis not inconsistent with the Constitution of [California] or of the United States." *Calder*, 465 U.S. at 786.

The California statute, unlike *D.C. Code §13-423(a)(3)*, did not require that both a tortious act and the resulting injury occur within the forum where jurisdiction is sought.  In contrast to *Calder*, many cases construing the District's long-arm statute have held that the writing and publication of an article outside of the District does not create jurisdiction under *D.C. Code §13-423(a)(3)*, even if the publication ultimately is transmitted to and read within the District of Columbia.

*Moncrief*, 807 F.2d at 218-19; *McFarlane v. Esquire Magazine,* 74 F.3d 1296,

1300 (D.C. Cir. 1996); *LaPointe v. Van Note*, 2004 U.S. Dist. LEXIS 27691

(D.D.C. Nov. 9, 2004).

Because the publication of the article does not serve as a legitimate

jurisdictional basis, the Geiers suggest that Dr. Parker's presentation six months

later might give rise to a claim.  But the only tortious act alleged in to the lawsuit

is the article, and the Geiers may not use other allegedly tortious conduct to create

personal jurisdiction.  *D.C. Code §13-423(b)*.  Such a limitation is particularly

appropriate in defamation cases because "a complaint for defamation must clearly

identify the specific defamatory statement of which the plaintiff complains."

*Mazur v. Szporer,* 2004 WL 1944849 (D.D.C 2004).  Having framed their claims

from the language of the article, they cannot jettison the article to rely upon other

conduct.

Nonetheless, because they have no other potential basis for jurisdiction, the

Geiers have asked for the ability to conduct discovery "to ascertain the content of

[Dr. Parker's] statements" at the conference.  No such discovery is appropriate,

particularly because the Centers for Disease Control published a transcript of Dr.

Parker's remarks.  Rather than using her presentation for the purpose of

"continuing her attack on the Geiers," Dr. Parker acknowledged that the Geiers

had access to manufacturer-specific data released by the CDC:

> So I'm going to go over the denominator first.  Again,
> [the Geiers] thought - - they referenced the Centers for
> Disease Control biologic survey summaries for the

denominator.  If you were to look this up - - and you
can get that on the Internet - - what it will give you is
the doses distributed in the United States of each
vaccine.  It does not, however, give you the vaccine by
manufacturer.  That information is proprietary between
the CDC and the manufacturers.

And we did have to print a correction to a paper that I
published this summer, stating that <u>the Geiers did
actually obtain that information</u>.  But you and I could
not do that.  But they did obtain that information, so
they had that information by manufacturer to use as the
denominator.[2]

What is most concerning about the Geiers' argument is that it suggests that
Dr. Parker's remarks are somehow tortious because she reached a conclusion that
"well designed epidemiologic studies do not support an association between
thimerosal and autism." Such a comment could not serve as a basis for the Court
to conclude that Dr. Parker engaged tortious conduct, as it so obviously states an
opinion about the existing body of medical research.

In making this argument and suggesting that Dr. Parker's remarks are
actionable because they could be interpreted "as implying to an audience of the
Geiers' peers that the Geiers' study was not well designed," the Geiers tip their
hand.  What they seek in this lawsuit is to insulate their research from legitimate
criticism, thereby enhancing Dr. Geiers' ability to serve as a full-time, professional
expert witness.  In doing so, the Geiers disserve the academic model they profess
to follow, which has always recognized that a disagreement between scientists

---

[2]         Exhibit B, Sarah Parker Declaration and attached transcript.  Dr. Parker's comments appear on
Page 8  of the transcript.

"belongs to the language of controversy, rather than the language of defamation."

*Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996).

### Conclusion

The Geiers have not established a basis for jurisdiction under *D.C. Code §13-423(a)(1)* or *D.C. Code §13-423(a)(3)*. In the absence of any basis for the Court to exert personal jurisdiction over Dr. Parker or Dr. Todd, they respectfully request that the Court dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

*Erica H. Perkins*
Edward J. Longosz, II  #368932
Erica Perkins #484162
1747 Pennsylvania Ave., N.W.,
Suite 1200
Washington, D.C. 20006

*Patrick T. O'Rourke*
Patrick T. O'Rourke
Managing Associate University Counsel
University of Colorado
1380 Lawrence Street, Suite 1325
Denver, CO 80204
303-556-4339
FACSIMILE:  303-825-7630
Patrick.Orourke@cudenver.edu
*Attorneys for Defendants Parker and Todd*

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Reply in Support of Parker and Todd's Motion to Dismiss** was served electronically and sent by first-class postage pre-paid mail, this 17th day of January 2006.

James A. Moody, Esquire
The Cullen Law Firm, P.L.L.C.
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007

Joseph A. Hennessey, Esquire
7315 Wisconsin Avenue, Suite 700
Bethesda, MD 20814

Alan Burch, Esquire
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

Jay Ward Brown, Esquire
Adam J. Rappaport, Esquire
Levine Sullivan Koch & Schultz, LLP
1050 17th Street, N.W., Suite 800
Washington, D.C. 20036

*Erica H. Perkins*
Erica H. Perkins