Westlaw.

--- F.Supp.2d ----                                                                                                          Page 1

--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States District Court, District of Columbia.
          Dorothy E. BRUNSON, Plaintiff,
                          v.
       KALIL & COMPANY, INC., and Brunson
          Communications, Inc., Defendants.
                No. Civ.A. 04-1828CKK.

                    Nov. 18, 2005.

**Background:** Seller's president brought action against broker, seeking a declaratory judgment seller did not owe broker any funds under a brokerage agreement pertaining to sale of New Jersey television station. Broker moved to dismiss complaint for lack of personal jurisdiction.

**Holdings:** The District Court, Kollar-Kotelly, J., held that:

2(1) specific personal jurisdiction was lacking over broker under "transacting business" provision of District of Columbia long-arm statute, and

7(2) exercising personal jurisdiction over nonresident broker would not comport with due process.

Motion granted.

[1] **Federal Courts 170B** ⟐76.5

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.5 k. Contacts with Forum State. Most Cited Cases

**Federal Courts 170B** ⟐76.10

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
While "general personal jurisdiction" permits a court to hear a suit without regard to the underlying claim's relationship to the defendant's activity in the forum, "specific personal jurisdiction" allows only those claims based on acts of a defendant that touch and concern the forum. D.C. Official Code, 2001 Ed. § 13-423.

[2] **Federal Courts 170B** ⟐1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Nonresident seller's suit against nonresident broker seeking declaration that broker was not owed funds under brokerage agreement pertaining to sale of a New Jersey television station did not arise from business transacted in the District of Columbia, and therefore specific personal jurisdiction was lacking over broker under "transacting business" provision of District of Columbia long-arm statute; broker traveled to Philadelphia in order to solicit the brokerage agreement, which was formed in Philadelphia, there was no solicitation, negotiation, or formation of the brokerage agreement which occurred in the District, and closing of sale of television station in District occurred pursuant to the purchase agreement, not the brokerage agreement. D.C. Official Code, 2001 Ed. § 13-423(a)(1).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                     Page 2
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

[3] **Federal Courts** 170B ⟿1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Nonresident broker's single contact of a potential buyer of New Jersey television station in the District of Columbia was not significant enough for court to assert personal jurisdiction over broker under "transacting business" provision of District of Columbia long-arm statute. D.C. Official Code, 2001 Ed. § 13-423(a)(1).

[4] **Federal Courts** 170B ⟿1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Three telephone calls and mailings which nonresident broker made to nonresident seller's attorney in the District of Columbia in order to secure payment it believed due under the brokerage agreement pertaining to sale of New Jersey television station did not constitute "transacting business" within meaning of District of Columbia long-arm statute; furthermore, broker's unilateral actions of employing counsel in the District of Columbia could not confer personal jurisdiction on broker. D.C. Official Code, 2001 Ed. § 13-423(a)(1).

[5] **Federal Courts** 170B ⟿1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Broker's communication with Federal Communications Commission (FCC) and the Securities and Exchange Commission (SEC) in District of Columbia related to his general business dealings did not qualify as "transacting business" in the District within meaning of District of Columbia long-arm statute. D.C. Official Code, 2001 Ed. § 13-423(a)(1).

[6] **Federal Courts** 170B ⟿1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Personal jurisdiction over nonresident broker under "transacting business" provision of District of Columbia long-arm statute could be based only on the acts that had occurred at the time the complaint was filed, not on those acts occurring after complaint was filed. D.C. Official Code, 2001 Ed. § 13-423(a)(1).

[7] **Constitutional Law** 92 ⟿305(5)

92 Constitutional Law
   92XII Due Process of Law
      92k304 Civil Remedies and Proceedings
         92k305 Actions
            92k305(4) Jurisdiction and Venue
               92k305(5) k. Nonresidents in General. Most Cited Cases

**Federal Courts** 170B ⟿1037

170B Federal Courts
   170BXI Courts of District of Columbia
      170BXI(A) In General; District Court
         170Bk1035 Jurisdiction of District Court
            170Bk1037 k. Persons Subject. Most Cited Cases
Exercising personal jurisdiction over nonresident broker, who had not transacted business in District of Columbia, would not comport with due process; long-distance negotiations between defendant and the non-resident seller's lawyer, who happened to be located in the District, was not a significant enough contact to have caused defendant reasonably to anticipate being haled into court, and notions of fair play and substantial justice would not be furthered by a finding of personal jurisdiction since the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                            Page 3
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

documents, records, and witnesses broker would rely upon in defending itself were all located in Arizona, and District's legitimate interests in the dispute were considerably diminished by fact that both parties were nonresidents. U.S.C.A. Const.Amend. 14.

Exercising personal jurisdiction over nonresident broker, who had not transacted business in District of Columbia, would not comport with due process; long-distance negotiations between defendant and the non-resident seller's lawyer, who happened to be located in the District, was not a significant enough contact to have caused defendant reasonably to anticipate being haled into court, and notions of fair play and substantial justice would not be furthered by a finding of personal jurisdiction since the documents, records, and witnesses broker would rely upon in defending itself were all located in Arizona, and District's legitimate interests in the dispute were considerably diminished by fact that both parties were nonresidents. U.S.C.A. Const.Amend. 14.

**[8] Constitutional Law 92 €⇒305(5)**

92 Constitutional Law
   92XII Due Process of Law
      92k304 Civil Remedies and Proceedings
         92k305 Actions
           92k305(4) Jurisdiction and Venue
              92k305(5) k. Nonresidents in General. Most Cited Cases
With respect to personal jurisdiction, due process requires that (1) nonresident defendant purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, (2) nonresident defendant reasonably anticipate being haled into court in the forum state, and (3) the suit cannot offend traditional notions of fair play and substantial justice; in addition, the "minimum contacts" must come about by an action of the defendant purposefully directed toward the forum state. U.S.C.A. Const.Amend. 14.

**[9] Constitutional Law 92 €⇒305(5)**

92 Constitutional Law
   92XII Due Process of Law
      92k304 Civil Remedies and Proceedings
         92k305 Actions
           92k305(4) Jurisdiction and Venue
              92k305(5) k. Nonresidents in General. Most Cited Cases
In determining whether the notions of fair play and substantial justice would be furthered by a finding of personal jurisdiction over nonresident defendant, court must consider the following: the burden to defendant in defending the suit in the jurisdiction; jurisdiction's interest in adjudicating the dispute; plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. U.S.C.A. Const.Amend. 4.

Kenneth A. Martin, Martin & Associates P.L.L.C., Washington, DC, for Plaintiff.
Edward J. Longosz, II, Mark Andrew Johnston, Eckert, Seamans, Cherin & Mellott, LLC, Washington, DC, for Defendants.

### MEMORANDUM OPINION

KOLLARKOTELLY, J.
*1 Plaintiff Dorothy Brunson brings this action against Defendants Kalil & Company, Inc. ("Kalil") and Brunson Communications, Inc. ("BCI"). Plaintiff is seeking a declaratory judgment from this Court that neither Plaintiff nor BCI owe Kalil any funds under a Brokerage Agreement dated November 6, 2003, and signed by Plaintiff on November 21, 2003. Defendant Kalil moves to dismiss Plaintiff's Complaint (1) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and (2) because Plaintiff is the improper plaintiff before this Court, having misused the Declaratory Judgment Act. Based on the reasoning set forth below, this Court shall grant Defendant Kalil's motion to dismiss for lack of personal jurisdiction.

### I: BACKGROUND 1

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----    Page 4
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Plaintiff is an individual residing in Maryland, who until October 1, 2004, was the sole shareholder of BCI. Am. Compl. ¶¶ 1, 5; Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1; Pl.'s Opp'n, Ex. 1 (Decl. of Dorothy E. Brunson ("Brunson Decl."), ¶¶ 1, 2. At times relevant to this suit, BCI was a New York corporation that operated the television station WGTW and the digital television station WGTW-DT (collectively "the Station"). Am. Compl. ¶ 3; Brunson Decl. ¶ 3. The Federal Communications Commission ("FCC") had licensed the Station to the community of Burlington, New Jersey. Am. Compl. ¶ 3. The Station's studios and operating equipment were located in Philadelphia, Pennsylvania. Am. Compl. ¶ 3; Brunson Decl. ¶ 3.

In 2002 and 2003 several offers had been made to BCI to buy the Station. Am. Compl. ¶ 6. In 2003, Kalil, an Arizona corporation with its principal place of business in Tucson, Arizona, became aware that BCI was considering a sale of the Station and sought an exclusive brokerage agreement with BCI regarding the sale of the Station. Am. Compl. ¶ 2, 7; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), Ex. 1 ("Frank Kalil Aff."), ¶ 2. On November 21, 2003, Plaintiff, in her capacity as BCI President, signed the Brokerage Agreement dated November 6, 2003, making Kalil BCI's exclusive broker in the search for a qualified and satisfactory buyer for the Station. Frank Kalil Aff, Ex. A (Brokerage Agreement). By its explicit terms, the Brokerage Agreement expired on January 21, 2004, "except as to (i) any agreement with a prospective buyer introduced to you by us that is being negotiated or is pending closing, or (ii) any one whom we introduce to you, and with whom you enter into an agreement on or before June 30, 2004." Id. At this same time, Ms. Brunson retained counsel located in the District of Columbia to represent BCI "in all matters related to the Brokerage Agreement and sale of BCI." Brunson Decl. ¶ 5.

Over the course of its search for a buyer, Kalil provided Plaintiff with regular updates of its activities. Brunson Decl. ¶ 7. One such update, dated April 16, 2004, listed Fox Television Stations, Inc., as one of the prospective clients listed. Pl.'s Opp'n, Ex. 2 (Apr. 16, 2004 Update) at 6. Kalil had contacted Fox at its offices in Washington D.C. Id. The April 16, 2004 Update lists only one contact with Fox. Id. The April 16, 2004 Update also listed Trinity Christian Center of Santa, Ana, Inc. ("Trinity") as a prospective client. Id. at 7. Trinity is a non-profit church corporation organized under the laws of California. Am. Compl. ¶ 5. In contrast with Fox, the contacts listed with Trinity were many, and the notes extensive; culminating on April 16, 2004, with Kalil sending Trinity a revised Letter of Intent. Id. However, as of June 30, 2004, Kalil had not found an appropriate buyer for the Station. Am. Compl. ¶ 13. On or about August 2, 2004, Plaintiff entered into a stock purchase agreement ("Purchase Agreement"), dated July 30, 2004, with Trinity. Am. Compl. ¶ 14. The Purchase Agreement closing occurred on October 1, 2004, in Washington, D.C., in accordance with a provision in the Purchase Agreement calling for the closing to occur at BCI's office in Philadelphia "or at such other time or place as [Trinity] and [Plaintiff] shall mutually agree in writing." Am. Compl. ¶ 15; Def.'s Mem., Ex. 2, § 2 (Purchase Agreement). Kalil was not a party to the Purchase Agreement and was not invited to attend the closing. Frank Kalil Aff., ¶ 16; Def.'s Mem., Ex. 2 (Purchase Agreement); Pl.'s Opp'n, Ex. 3 (Decl. of Barry Wood ("Wood Decl. I")), ¶ 14.

*2 Prior to the closing, Kelly Callan, a Kalil employee, phoned Barry Wood, BCI's long-time attorney who handled the negotiation and finalization of the Purchase Agreement. Wood Decl. I ¶¶ 4, 9, 11. Mr. Wood is the president of Wood, Maine & Brown, Chartered, a District of Columbia professional corporation with its main office located at 1827 Jefferson Place, NW, Washington, D.C. Wood Decl. I ¶ 1. Pursuant to their conversation in which Mr. Wood informed Mr. Callan that he had no invoice on which to determine what Kalil might be owed as a result of the Purchase Agreement, Mr. Callan faxed Mr. Wood an invoice for $960,000. Wood Decl. I ¶¶ 11, 12. Mr. Wood subsequently requested from Mr. Callan the document that had formed the basis for the invoice. Wood Decl. I ¶ 13. In response, on September 29, 2004, Mr. Callan faxed Mr. Wood the Brokerage Agreement. Wood Decl. I ¶ 13. A

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                  Page 5

--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

number of communications between Mr. Wood, Frank Kalil, President of Kalil, and Tim Ryan, Kalil's attorney, followed. Mr. Ryan's office was located in Pittsburgh, Pennsylvania. Def.'s Reply, Ex. 4 (Decl. of Timothy P. Ryan ("Ryan Decl.")), ¶ 1. Most importantly:

October 4, 2004-Mr. Kalil faxed a letter to the Station for the Plaintiff advancing a settlement offer that was to expire on October 5, 2004 at 5:00 p.m. Wood Decl I ¶ 20.

October 5, 2005-Mr. Ryan faxed Mr. Wood a letter indicating Kalil's intent to sue "[u]nless the full amount owed by Brunson is immediately paid over to Kailil." Wood Decl. I ¶ 21; Ryan Decl. ¶ 5; Ryan Decl., Ex. A (Letter from Mr. Ryan to Mr. Wood).

October 6, 2004-Mr. Ryan called Mr. Wood in order to discuss the letter he had sent the previous day and to discuss the possibility of resolving the matter without resorting to litigation. Mr. Wood did not take the call. Ryan Decl. ¶ 6. Later that day, at 10:30 p.m. Mr. Wood returned Mr. Ryan's phone call and left a message indicating that Plaintiff and BCI were interested in settling the matter fairly and reasonably. Ryan Decl. ¶ 7; Ryan Decl., Ex. B (transcribed message).

October 7, 2004-Mr. Ryan faxed Mr. Wood a copy of the letter Mr. Ryan had sent to Trinity's attorney demanding payment of Kalil's commission. Mr. Wood attempted to contact Mr. Ryan twice to discuss the October 7, 2004 letter, but Mr. Ryan did not take the calls. Wood Decl. I ¶ 22.

October 13, 2004-Mr. Wood left a message for Mr. Ryan stating that the next day a letter would be sent including Plaintiff's and BCI's position. Ryan Decl. ¶ 9.

October 15, 2004-Mr. Wood faxed the settlement letter to Mr. Ryan. The letter requested an opportunity for Mr. Wood, Mr. Ryan, and Trinity's lawyer to meet and try to resolve the matter. Wood Decl. I ¶ 22; Ryan Decl. ¶ 10; Ryan Decl., Ex. C (Letter from Mr. Wood to Mr. Ryan). Later that day, Mr. Wood, Mr. Ryan, and Trinity's attorney had a conversation in which Mr. Ryan renewed his October 4, 2004 offer to which Mr. Wood made a counteroffer. Wood Decl. I ¶ 23; Ryan Decl. ¶ 11.

*3 October 20, 2004-Mr. Wood called Mr. Ryan in order to pursue the counteroffer he made in the October 15, 2004 conversation. Wood Decl. I ¶ 23. Mr. Wood and Mr. Ryan discussed the possibility of Plaintiff and Mr. Kalil speaking directly regarding the settlement. Ryan Decl. ¶ 12; Pl.'s Surrepy [sic] ("Pl.'s Surreply"), Ex. 1 (Decl. of Barry Wood ("Wood Decl. II")), ¶ 7. Mr. Wood confirmed this conversation in an email to Mr. Ryan later in the day on October 20, 2004. Ryan Decl. ¶ 13; Ryan Decl., Ex. D (Wood Email).

October 28, 2004-Mr. Wood called Mr. Ryan and left a message. Wood Decl. I ¶ 25; Wood Decl. II ¶ 3; Ryan Decl. ¶ 15.

November 1, 2004-Mr. Ryan returned Mr. Wood's October 28 phone call and they spoke about Plaintiff's decision not to talk directly to Mr. Kalil. Mr. Wood also reiterated Plaintiff's previously stated position. Ryan Decl. ¶ 16; Wood Decl. II ¶ 4.

Mr. Ryan also stated in his Declaration that he did not become aware that Plaintiff filed suit in this Court until November 9, 2004. Ryan Decl. ¶ 18. Plaintiff had in fact filed the action on or about October 21, 2004. Ryan Decl. ¶¶ 14, 18; Compl. at 9 (giving the date of the original Complaint as October 20, 2004). On November 29, 2004, Kalil filed suit against BCI, Plaintiff, and Trinity in the United States District Court for the District of Arizona. Def.'s Mem. at 3; Frank Kalil Aff., ¶ 20. [FN2]

Plaintiff's Amended Complaint sets forth one count for declaratory judgment requesting this Court to affirm that neither BCI nor Plaintiff owe Kalil any funds under the Brokerage Agreement. Am. Compl. ¶ 30. Kalil, in response, posits two defenses. First, Kalil argues that this Court has no personal jurisdiction over it. Def.'s Mot. to Dismiss ("Def's Mot.") at 1; Def.'s Mem. at 7. Second, Kalil argues that regardless of personal jurisdiction, Plaintiff is the incorrect plaintiff to bring this suit and has misused the Declaratory Judgment Act. Def.'s Mot. at 1; Def.'s Mem. at 19. For the reasons set forth below, Defendant Kalil's Motion to Dismiss is granted for lack of personal jurisdiction. [FN3] Due to the fact that Kalil's Motion can be resolved by analyzing only whether this Court has personal jurisdiction over Kalil, there is no need for this Court to address Kalil's second argument.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                  Page 6
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

## II: LEGAL STANDARD

In considering a Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant. "The general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1378 (D.C.Cir.1988). Conclusory statements, however, "do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *Id.* (quoting *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C.Cir.1983)). In order to successfully carry its burden, the plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws." *Helmer v. Doletskaya,* 290 F.Supp.2d 61, 66 (D.D.C.2003), *rev'd on other grounds, Helmer v. Doletskaya,* 393 F.3d 201 (D.C.Cir.2004). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990) (citing *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C.Cir.1984)).

## III: DISCUSSION

*4 The issue in this case is whether this Court has personal jurisdiction over Defendant Kalil. It is not contested that Kalil is not a resident of the District of Columbia. Am. Compl. ¶ 2; Frank Kalil Aff., ¶ 2. Therefore, in order for this Court to have personal jurisdiction over Kalil, this Court "must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. Bellsouth Corp.,* 199 F.3d 1343, 1347 (D.C.Cir.2000). While it is not specifically stated in the Amended Complaint, [FN4] Plaintiff is asserting personal jurisdiction under the "transacting any business" clause of the District of Columbia's long-arm statute, D.C.Code § 13-423(a)(1), which provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's-
(1) transacting any business in the District of Columbia; ...

D.C.Code § 13-423(a)(1) (2001). This "transacting any business" clause has generally been interpreted broadly "to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." *GTE New Media Servs., Inc.,* 199 F.3d at 1347.

[1] While general personal jurisdiction permits a court to hear "a suit ... without regard to the underlying claim's relationship to the defendant's activity" in the forum, specific personal jurisdiction allows only those claims "based on acts of a defendant that touch and concern the forum." *Schwartz v. CDI Japan, Ltd.,* 938 F.Supp. 1, 5 (D.D.C.1996) (citing *Steinberg v. Int'l Criminal Police Org.,* 672 F.2d 927, 928 (D.C.Cir.1981)). Section 13-423(b) states that "[w]hen jurisdiction over a person is based solely upon [§ 13-423], only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C.Code § 13-423(b) (2001). When read as a whole, therefore, the personal jurisdiction conferred under § 13-423(a) is limited by § 13-423(b) to specific jurisdiction by "disallow [ing] claims that do not relate to the acts that form the basis for personal jurisdiction." *Schwartz,* 938 F.Supp. at 5.

Consequently, to meet the requirements of personal jurisdiction under the "transacting any business" prong of the long-arm statute, the plaintiff must prove "first, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend ' traditional notions of fair play and substantial justice.' " *Dooley v. United Tech. Corp.,* 786 F.Supp. 65, 71 (D.D.C.1992) (quoting *Int'l Shoe v. State of Washington, Office of Unemployment*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)  
(Cite as: --- F.Supp.2d ----)

Page 7

*Compensation and Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Moreover, " '[t]ransacting any business' within the meaning of [ D.C.Code § 13-423(a)(1) ] embraces those contractual activities of a nonresident defendant which cause a consequence in the District." *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti,* 15 F.Supp.2d 47, 51 (D.D.C.1998); *see also Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) ( "It is now well-settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here.").

*5 Accordingly, under the three-prong analysis set forth in *Dooley,* the Court will consider *first* whether Plaintiff's claim *arose* from Kalil's alleged business transactions in the District, assuming *arguendo* that Kalil had been transacting business in the District, thus indicating whether jurisdiction can be found under § 13-423(a)(1); *second,* whether Defendant was, in fact, "transacting any business" in the District; and *third,* whether Kalil had the requisite minimum contacts to satisfy due process. *See Dooley,* 786 F.Supp. at 71.

### A. The Claim Must Arise from Business Transacted in the District

In order for this Court to have personal jurisdiction over Kalil, the actions giving rise to the claim must have occurred in the District. *Id.; see also COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. 515, 521 (D.D.C.1995) (stating that part of what a plaintiff needs to show is that "the claim arose from the business transacted in the District (so-called specific jurisdiction)"). As such, the Court will now address this first prong of the analysis.

[2] The Brokerage Agreement was between BCI and Kalil. Am. Compl. ¶ 7; Def.'s Mem. at 1; Frank Kalil Aff., Ex. A (Brokerage Agreement). The Brokerage Agreement is dated November 6, 2003, and signed by the Plaintiff on November 21, 2003. Frank Kalil Aff., Ex. A (Brokerage Agreement). It is alleged in Plaintiff's Surreply that Kalil traveled to Philadelphia, the principal place of business of BCI, in order to solicit the Brokerage Agreement. Pl.'s Surreply at 4. It is further alleged that the Brokerage Agreement "was formed in Philadelphia where Ms. Brunson signed it on behalf of BCI." *Id.* Neither party alleges that any of the solicitation, negotiation, or formation of the Brokerage Agreement occurred in the District, nor that Plaintiff is a resident of the District of Columbia. *Contra Overseas Partners,* 15 F.Supp.2d at 51 (listed as reasons for why defendant transacted business in the District are the fact that District-resident plaintiff was actively sought out by non-resident defendant; that some of the terms of the contract were negotiated in the District; that defendant's agents traveled to the District to discuss the contract; and that the negotiated contract contemplated extensive performance of the contract in the District). Contradicting Frank Kalil's sworn affidavit that "[n]o part of the Agreement was to be performed in the District of Columbia," Frank Kalil Aff. ¶ 23, Plaintiff alleges that the Brokerage Agreement "was to be performed nation wide, wherever a 'prospective buyer' m ight be located." Pl.'s Opp'n at 5. Furthermore, Plaintiff alleges that the Brokerage Agreement was in fact performed in the District when on November 25, 2003, Kalil contacted Fox Television President of Station Operations Tom Herwitz. *Id.* at 5, 6, 11, 12, 15, 17 (referring repeatedly to Kalil's solicitation of " prospective *buyers,*" when in fact Plaintiff refers only to the one contact made to Mr. Herwitz); *Id.,* Ex. 2 (Apr. 16, 2004 Update) at 6.

*6 While Kalil attempts to clarify this contact with Mr. Herwitz as merely "gaug[ing] the general interest of Fox in obtaining or selling any of its holdings at the time," Def's Reply at 6, Kalil also notes that this contact with the District was not related to the sale of the Station. Def's Reply at 8. That the contact with Mr. Herwitz was not related to the sale of the Station necessarily precludes this contact from being the basis from which Plaintiff's claim arose.

Plaintiff notes two other sets of contacts with the District regarding Kalil's alleged business transactions in the District of Columbia. *First,* she argues that Kalil's correspondence with BCI's lawyer, Mr. Wood, in the District of Columbia

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B0055800000...   1/13/2006

--- F.Supp.2d ----
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Page 8

regarding Kalil's commission after the closing with Trinity were business transactions in the District. *Second,* she argues that Kalil's contacts with another communications corporation located in the District of Columbia on November 29, 2004, was a business transaction in the District. Assuming, *arguendo,* that both of these actions qualify as "transacting any business" in the District of Columbia, [FN5] neither are the actions from which the claim arose, and therefore neither can form the basis of this Court's specific personal jurisdiction, under § 13-423(a)(1), over Kalil.

*First,* Kalil's correspondence with Mr. Wood did not give rise to this claim. The actions that gave rise to this claim were Kalil's actions under the Brokerage Agreement when it was seeking a buyer for the Station. Kalil is seeking its commission based on the Brokerage Agreement and the actions it performed under the Brokerage Agreement that it argues brought about the sale of the Station, Def.'s Mem. at 2, not based on the communications with Mr. Wood subsequent to the closing. In Plaintiff's Amended Complaint, she asserts that she is seeking declaratory judgment based on the rights and obligations of the parties under the Brokerage Agreement. Am. Compl. at 1 & ¶ 30. However, in her Opposition she states that the closing of the sale in Washington, D.C. is the "central event in the case." Pl.'s Opp'n at 18. The closing, however, occurred pursuant to the Purchase Agreement, not the Brokerage Agreement. Am. Compl. ¶ 14, Def.'s Mem., Ex. 2 (Purchase Agreement). By characterizing the closing to be the central event in this case which gave rise to this claim, Plaintiff is requesting this Court to analyze the Purchase Agreement, not the Brokerage Agreement. Plaintiff cannot have it both ways. This Court refuses to find that actions related to the Purchase Agreement gave rise to this claim, which Plaintiff ostensibly brought pursuant to the Brokerage Agreement.

*Second,* it is irrelevant whether Kalil made a contact with another communications corporation located in the District in November 2004. Plaintiff alleges that on November 29, 2004, Fred Kalil, a Kalil employee, left a message for Frederick J. Ryan, Jr., President and Chief Operating Officer of Allbritton Communications Company ("Allbritton"),

regarding the sale of an Arkansas television station. Pl.'s Opp'n at 4, 7; *Id.,* Ex. 4 (Aff. of Jerald N. Fritz ("Fritz Aff.")). The date of the phone call was well after this suit had been filed. Furthermore, Plaintiff's claim does not arise from Fred Kalil's telephone message to Mr. Ryan of Allbritton, therefore it cannot be asserted that this contact results in this Court having personal jurisdiction over Kalil.

*7 Based on the fact that Plaintiff's claim did not arise from business transacted in the District of Columbia, this Court cannot have specific personal jurisdiction over Defendant Kalil, pursuant to D.C.Code §§ 13-423(a)(1) and 13-423(b).

### B. Transacting Any Business in the District of Columbia

Although Plaintiff was unable to show that her claim actually arose from business transactions conducted in the District of Columbia, and therefore this Court does not have specific personal jurisdiction pursuant to § 13-423(a)(1), the Court will address, in this second prong of the analysis, Plaintiff's four arguments supporting her claim that Kalil was transacting business within the District of Columbia and, therefore, specific jurisdiction can be maintained. *First,* Plaintiff asserts that Kalil's contact with Fox Television President of Stations Operations Tom Herwitz amounted to Kalil performing the Brokerage Agreement in the District of Columbia. *Second,* Plaintiff claims that the telephone calls and mailings Kalil made into the District in connection with its attempt to secure its commission qualify as a conducting business in the District. *Third,* Plaintiff contends that Kalil's communication with the FCC and the Securities and Exchange Commission ("SEC") in the District related to Kalil's general business dealings qualify as transacting business in the District. And *fourth,* Plaintiff argues that Kalil solicits business in the District, which qualifies as transacting business in the District.

#### 1. Kalil Performed the Brokerage Agreement in the District

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)  
(Cite as: --- F.Supp.2d ----)

Page 9

[3] Plaintiff first argues that Kalil performed the Brokerage Agreement in the District when it " solicited Fox Television Stations, Inc. (a/k/a/ Fox News) in the District of Columbia as a 'prospective buyer' of BCI." Pl.'s Opp'n at 8. This contact, Plaintiff claims, "is the only contact necessary to justify the Court's exercise of its jurisdiction over Kalil." *Id.* This argument is predicated upon two interrelated principles: (1) performance of a contract in the District qualifies as "transacting any business" and (2) one act of transacting business is sufficient to satisfy § 13-423(a)(1). *Id.* at 13-14.

It is true that both the United States Court of Appeals and the District Court in this Circuit have held that negotiation, formation, and performance of contracts constitute a business transactions under § 13-423(a)(1). *See Helmer*, 393 F.3d at 206 (holding that the formation and performance of a contract in the District and the parties contemplated future contacts with the District as a condition of performance gave the district court personal jurisdiction over the nonresident defendant); *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F.Supp.2d 142, 146 (D.D.C.2003) (finding specific personal jurisdiction over non-resident defendant because defendant had entered into a contract with plaintiff " requiring continuing and wide-reaching contacts with the District of Columbia"). However, in *Helmer*, the parties had negotiated *and* formed the contract in the District, while in *Ulico*, the contract required extensive future contacts with the District. Here, none of these additional factors are present. Kalil did not solicit Plaintiff in the District; rather, according to Plaintiff's own Declaration, Kalil traveled to Philadelphia to solicit the agreement. Brunson Decl. ¶ 4. Formation of the Brokerage Agreement did not occur in the District; instead, formation was completed on November 21, 2003, when Plaintiff signed the Brokerage Agreement in Philadelphia. Frank Kalil Aff., Ex. A (Brokerage Agreement).

*8 Arguably, however, the Brokerage Agreement contemplated performance in the District, because it states that Kalil will use its "best efforts" to secure a "satisfactory and qualified buyer" for the Station. Frank Kalil Aff., Ex. A (Brokerage Agreement). Presuming that Kalil's contact with Fox was intended under the Brokerage Agreement to solicit a buyer for the Station, as factual disputes must be resolved in favor of the plaintiff, *Crane*, 894 F.2d at 456, Plaintiff argues that this single contact is enough to establish that Kalil was transacting business in the District. She relies upon three cases in support of this argument: (1) *Helmer v. Doletskaya*, 290 F.Supp.2d 61 (D.D.C.2003); (2) *Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1 (D.D.C.1996); and (3) *Reiman v. First Union Real Estate Equity & Mortgage Invs.*, 614 F.Supp. 255 (D.D.C.1985). *Helmer* and *Reiman* employ the same language, *"under certain circumstances,"* to limit the scope of the phrase "a single act may be sufficient," Helmer, 290 F.Supp.2d at 67; Reiman, 614 F.Supp. at 257, but neither court had reason to actually apply this principle.

*First*, in *Helmer*, the plaintiff was a District resident who had been living for some time in Russia. *Helmer*, 290 F.Supp.2d at 64. The Defendant was a Russian national. *Id.* The two began dating and when they returned to the District for a brief stay in July 1993, they entered into an agreement whereby the plaintiff agreed to support the defendant, subject to repayment when the defendant had established her career. *Id.* The plaintiff had agreed to allow the defendant the use of two of his credit cards, the bills for which were directed to the plaintiff's District residence. *Id.* at 65. The district court found that the "sole connection" between the contract to repay the expenses and the District was that the credit card bills were sent to the District. *Id.* at 68. It concluded that this connection with the District was " insufficient to establish the requisite 'substantial connection' with the forum." *Id.* This holding was reversed by the Court of Appeals, which found there to be more than one contact between the defendant and the District. *Helmer*, 393 F.3d at 206. In particular, the Court of Appeals held that because the contract was formed in the District, that the corpus of the contract was the use of credit cards issued to a District resident, the bills for which were sent to a District address, and that the parties contemplated future contacts with the District as a condition of performance, the defendant had purposefully availed herself of the benefits of District law. *Id.* Therefore, where the district court found only one contact, and concluded

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----    Page 10
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

that the single contact was insufficient to establish personal jurisdiction, the Court of Appeals found multiple contacts, rendering personal jurisdiction appropriate. In either instance, the holdings of *Helmer,* both at the district court level and the Court of Appeals, are not conducive to the furtherance of Plaintiff's argument that one contact is sufficient to establish "transacting business."

*9 *Second,* in *Reiman,* the court never reached a determination as to whether the contacts between the non-resident defendant and the resident plaintiff were sufficient to permit the court's exercise of personal jurisdiction due to the existence of several disputed material facts. *Reiman,* 614 F.Supp. at 258-59. Instead, the court had merely noted in dicta the principle that "under certain circumstances, even a single act may be sufficient" to implicate § 13-423(a)(1). *Id.* at 257. Therefore, *Reiman* is not substantively applicable to this case, and therefore is not persuasive.

Furthermore, in neither *Helmer* nor *Reiman* did the court cite as authority for this proposition a case in which personal jurisdiction was actually found based on a single business transaction. In fact, the primary authority for this proposition in *Reiman* is *Bueno v. La Compania Peruana de Radiodifusion, S.A.,* 375 A.2d 6, 9 (D.C.1977). *Id.* at 257. In *Bueno,* the only contact the defendant had with the District was a delivery of a duplicate contract, by courier, at the request and expense of the plaintiff. *Bueno,* 375 A.2d at 9. While the court recognized that "under certain circumstances, a single act may be sufficient to constitute 'transacting business,' " it refused to extend personal jurisdiction under the facts of the case. *Id.* (citing *Cent. Ins. Agency, Co. v. Fin. Credit Corp.,* 222 F.Supp. 627 (D.D.C.1963)). In *Central Insurance Agency,* the court simply noted that a single act of transacting business is sufficient to constitute "doing business" under the District of Columbia's service of foreign corporations statute. *Cent. Ins. Agency, Co.,* 222 F.Supp. at 628. However, *Central Insurance Agency* makes no mention of whether a single act qualifies as "transacting business" under the District of Columbia's long-arm personal jurisdiction statute.

*Third,* in *Schwartz,* the defendant was a Japanese-national who had never set foot in the District of Columbia, and who had no role in the negotiation, solicitation, or development of a contract that was the subject of the suit. *Schwartz,* 938 F.Supp. at 5. The court in *Schwartz* noted that [a]lthough a defendant's contact with a forum resident will not automatically establish minimum contacts sufficient to confer personal jurisdiction, factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are relevant to the determination.

*Id.* at 6 (quoting *Reiman,* 614 F.Supp. at 258). The sole contact the defendant had with the District was that he co-signed the assignment of the contract. *Id.* at 5. This act, combined with defendant's " contemplat[ion][of] future consequences in addition to the parties' course of dealing constitutes transacting business in this forum." *Id.* at 6.

The case at bar differs in three distinct ways from *Schwartz.* First, in *Schwartz,* the defendant had a contract with the Smithsonian Institution's National Museum of American Art, a District of Columbia resident. *Id.* at 3. In this case, neither Plaintiff, BCI, Trinity, nor Kalil are residents of the District. Second, the Brokerage Agreement, unlike the contract in *Schwartz,* was not negotiated or executed in the District, nor were the laws of the District explicitly stated as being controlling. *Id.* at 6. The Brokerage Agreement does not specify which state's laws would govern the agreement, but since the Brokerage Agreement was drafted in Arizona and executed in Pennsylvania, the laws of the District do not appear to be the laws that would govern the agreement without being explicitly stated. Third, while arguably the Brokerage Agreement contemplated performance in the District as part of Kalil's "best efforts ... to find a satisfactory and qualified buyer" for the Station, Frank Kalil Aff., Ex. A (Brokerage Agreement), Plaintiff's and Kalil's course of dealing was far removed from the District. In short, while the single contact the defendant in *Schwartz* had with the District had "such a substantial connection with the District such that the exercise of personal jurisdiction is permissible," *Schwartz,* 938 F.Supp. at 6, the same cannot be said for Kalil. *See also*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)  
**(Cite as: --- F.Supp.2d ----)**

Page 11

*Dooley,* 786 F.Supp. at 75 n. 8 (noting that "[t]he Supreme Court has stated that even a single act within the district can support jurisdiction when it creates a *substantial* connection with the forum.") (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 2184 n. 18, 85 L.Ed.2d 528 (1985)).

**\*10** Furthermore, while "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here," *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 331 (D.C.2000), it is important to remember that "[t]he Court must resolve personal jurisdiction issues 'on a case-by-case basis.' " *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. 46, 49 (D.D.C.1994) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 811 (D.C.1976)).

Here, when considering all the facts of this case, the single contact of a potential buyer in the District is not significant enough for this Court to assert personal jurisdiction over Kalil. Unlike in *Shoppers Food Warehouse,* where the District of Columbia Court of Appeals found that the appellant grocery food chain's extensive and repeated advertisement in a major District of Columbia newspaper to solicit District residents to travel to its stores in Virginia and Maryland qualified as transacting business in the District, *Shoppers Food Warehouse,* 746 A.2d at 336, Kalil made a single phone call to Mr. Herwitz. Pl.'s Opp'n, Ex. 2 (Apr. 16, 2004 Update) at 6. The contact was isolated and brief. Furthermore, in *Shoppers Food Warehouse,* the court noted that the purpose of the District of Columbia's long-arm statute was "to afford *District* residents broad access to our courts limited only by due process considerations." *Id.* at 337 (emphasis added). Therefore, when considering all the facts, including that none of the parties, not even Plaintiff, are District of Columbia residents; that the contact relied upon by Plaintiff was an isolated and brief incident; and that Kalil had no substantial relationship with the District, this Court refuses to exert personal jurisdiction over Kalil based on its solitary contact with an employee of Fox Television.

*2. Telephone Calls and Mailings into the District Constitute "Transacting Any Business"*

[4] Plaintiff's second argument for why this Court should exercise personal jurisdiction over Kalil is that telephone calls and mailings Kalil made into the District in connection with its attempt to receive the commission it contends it is due constituted " transacting business" under § 13-423(a)(1). This argument fails for three reasons. First, the principal case on which Plaintiff relies is readily distinguishable from the case at bar. Second, the phone calls and mailings Kalil made into the District do not constitute transacting business under the statute. Third, Plaintiff's unilateral actions of employing counsel in the District of Columbia cannot confer personal jurisdiction on Kalil.

*First,* the primary case Plaintiff cites in support of this argument is *Dooley v. United Technologies Corp.,* 786 F.Supp. 65 (D.D.C.1992). Pl.'s Opp'n at 14; Pl.'s Surreply at 9. In *Dooley,* the plaintiff was alleging that defendants were engaged in an elaborate conspiracy to sell armed helicopters to Saudi Arabia. *Dooley,* 786 F.Supp. at 69-70. To support a finding of personal jurisdiction under the " transacting business" clause of the District of Columbia longarm statute over one set of the defendants, the "UTC Corporate Defendants," the plaintiff alleged that the UTC Corporate Defendants owned and maintained business and residential property in the District; that representatives of the UTC Corporate Defendants made numerous trips to the District to further the success of the alleged conspiracy; that the UTC Corporate Defendants sought out a Washington, D.C. corporation to aid them in laundering the bribes passed to the Saudis; and that the UTC Corporate Defendants "made *countless* phone calls and mailings into the District" directly related to the conspiracy. *Id.* at 72 (emphasis added). While the court notes "that telephone calls and mailings to Washington, D.C. constitute 'transacting business' under section 13-423(a)(1)," *id.,* as noted above the court had a plethora of other contacts with the District, aside from the phone calls and mailings allegedly made by the UTC Corporate Defendants, on which to base its finding that the UTC Corporate Defendants were transacting business in the District. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                    Page 12
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Furthermore, the court had "countless" phone calls and mailings on which to rely, if phone calls and mailings had been the only business transactions the UTC Corporate Defendants had with the District. *Id.*

**\*11** In this case, however, unlike the UTC Corporate Defendants in *Dooley*, Kalil owns no property in the District; it never went to the District to further the transaction; and it never contacted or used a third-party District corporation in connection with the transaction. Def's Reply at 8. In addition, the phone calls and mailings Plaintiff relies on are far from "countless." Plaintiff points to only three specific contacts Kalil had with BCI lawyer Barry Wood in the District of Columbia to establish that Kalil transacted business. The first was the faxed invoice for $960,000; the second was the demand letter from Mr. Ryan to Mr. Wood; and the third was Kalil's initiation of settlement discussions with Mr. Wood. Pl.'s Opp'n at 15. In contrast to the "countless" phone calls and mailings in *Dooley*, these contacts are minimal at best.

*Second*, Plaintiff's argument that Kalil's correspondence with BCI's attorney in Washington, D.C. constitutes "transacting business" is without merit. In *COMSAT*, where defendant's *"limited* fax and telephone communication" with plaintiff's office in Washington, D.C., *COMSAT*, 900 F.Supp. at 523 (emphasis added), including some communications initiated by defendant, were determined by the court to be insufficient to establish that defendant "purposefully availed itself of the privilege of transacting business in the District of Columbia," *id.*, the court relied on the fact that defendant "was required to communicate with COMSAT at its offices in the District of Columbia regarding invoices has not been shown to arise out of any desire of [defendant] to do business with COMSAT in Washington, D.C." *Id. COMSAT* is analogous to the case at bar. Here, Kalil had limited contact with BCI's attorney in the District of Columbia in order to secure payment it believed due under the Brokerage Agreement. The contact arose out a desire to be paid for services rendered, " not out of any desire ... to do business ... in the District of Columbia." *Id.*

Similarly, in *Cellutech*, the court held that "[t]he non-resident defendants' long-distance contract negotiations with a non-resident plaintiff's attorney who happened to have offices in the District ... [is] not [a] significant enough contact[ ] to have caused the defendants reasonably to anticipate being haled into court here." *Cellutech*, 871 F.Supp. at 50. *Cellutech* is particularly analogous as both defendants and plaintiff were non-residents and negotiations were handled though plaintiff's attorney in the District. This Court finds persuasive the analogy of the negotiation of a contract in *Cellutech* to the settlement negotiations in this case.

Furthermore, this Circuit has determined that a " single responsive mailing cannot constitute the ' meaningful' contact or 'substantial connection' between the defendant and the forum state" that is required to satisfy due process. *United States v. Ferrara*, 54 F.3d 825, 831 (D.C.Cir.1995) (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181 and *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Therefore, Kalil's act of faxing the $960,000 invoice to Mr. Wood, which Mr. Wood affirms in his Declaration was done in response to his indication that he had no invoice on which to determine Kalil's commission, Wood Decl. I ¶ 12, cannot qualify as transacting business under the statute.

**\*12** *Third*, Kalil argues that these contacts were a result of a request by Mr. Wood or by virtue of Plaintiff's unilateral decision to hire counsel in Washington, D.C., neither of which, it is contended, can confer personal jurisdiction over Kalil. Def's Reply at 9. "The minimum contacts analysis embodies the basic notion that the defendant's *own action* must be such as to put it on notice of the possibility of defending itself in the forum state." *COMSAT*, 900 F.Supp. at 520-21 (emphasis added). Kalil did not solicit the Brokerage Agreement in Washington, D.C., Brunson Decl. ¶ 4; the Brokerage Agreement was not negotiated, in whole or in part, in Washington, D.C., Frank Kalil Aff., ¶ 22; the Brokerage Agreement was not executed in Washington, D.C., Frank Kalil Aff., Ex. A (Brokerage Agreement); and Kalil never traveled to Washington, D.C. in order to further the Brokerage

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                             Page 13
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Agreement, Frank Kalil Aff., ¶ 24. Plaintiff argues that by the terms of the Brokerage Agreement all correspondence should have been directed to BCI at its office in Philadelphia, Pl.'s Surreply at 9; Frank Kalil Aff., Ex. 1 (Brokerage Agreement), therefore when Kalil "unilaterally determined to send its invoice solely" to Mr. Wood in the District of Columbia, it removed these contacts from the realm of Plaintiff's unilateral activity to have counsel in the District. Pl.'s Surreply at 8, 9. However, it was a logical decision for Kalil to direct its inquiries about payment to Mr. Wood in the District rather than to BCI's offices in Philadelphia, as Mr. Wood negotiated and finalized the Purchase Agreement that resulted in the sale of BCI to Trinity. See Wood Decl. I ¶ 9 (indicating that he was involved in the development of the Purchase Agreement and its finalization). Furthermore, Plaintiff admits in her Declaration that she "retained counsel in the District of Columbia to represent BCI in *all matters related to the Brokerage Agreement and sale of BCI.*" Brunson Decl. ¶ 5 (emphasis added). As stated above, the invoice was sent in response to Mr. Wood's indication that he had no invoice by which he could determine the amount due to Kalil. Wood Decl. I ¶ 12. While Kalil initiated that first call to Mr. Wood, Kalil sent Mr. Wood additional materials, particularly the invoice, in response to Mr. Wood's requests. Wood Decl. I ¶¶ 12, 13. Had Philadelphia been a more appropriate place to direct correspondence regarding Kalil's attempt to be paid, Mr. Wood, as BCI's transactional attorney, presumably would have specified as such. Therefore, Plaintiff's argument that the contacts with Mr. Wood constituted transacting business in the District fails.

*3. Communication and Meetings with FCC and SEC Related to Kalil's General Business are a Basis for this Court's Jurisdiction*

[5] Plaintiff also argues that Kalil "often comes to the District of Columbia for meetings in the course of its business and to access filings with the Federal Communications Commissions and possibly the Securities and Exchanges Commission relevant to its general business ." Pl.'s Opp'n at 6, 7. Kalil argues that these alleged contacts with the District cannot bear on the existence of personal jurisdiction because the "government contacts exception precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency." *Dooley,* 786 F.Supp. at 75; Def's Reply at 11. Indeed, the court in *Cellutech* explained that "[t]he District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government." *Cellutech,* 871 F.Supp. at 50; Def's Reply at 11. The government contact exception has also been accepted by the Court of Appeals. See *Ferrara,* 54 F.3d at 831 ("[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.") (quoting *Envt'l Research Int'l, Inc.,* 355 A.2d at 813). In addition, the allegation is merely a conclusory statement, which cannot "constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *First Chi. Int'l,* 836 F.2d at 1378. Plaintiff's reliance on Kalil's alleged contacts with the FCC and the SEC therefore do not constitute transacting business.

*4. Kalil Solicits Business in the District*

*13 [6] Plaintiff's final argument that Kalil transacted business in the District is that Kalil actively solicits business in the District. This argument is made in response to an assertion made by Frank Kalil in his Affidavit stating that "Kalil does not advertise or solicit any business in the District of Columbia." Frank Kalil Aff. ¶ 21; Pl.'s Opp'n at 15. Plaintiff relies on a contact made by Fred Kalil, a Kalil employee, on November 29, 2004, to Frederick J. Ryan, Jr., President and Chief Operating Officer of Allbritton Communications Company, at his office and Allbritton headquarters at 808 17th Street, NW, Washington, D.C. as support for this argument. Pl.'s Opp'n at 15; Fritz Aff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                       Page 14
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

In *Shoppers Food Warehouse*, the business transaction in question consisted of appellant's " extensive advertising activity in a major District of Columbia newspaper." *Shoppers Food Warehouse*, 746 A.2d at 336. The court determined that this advertising "deliberately and directly solicited District residents as customers for its nearby Maryland and Virginia stores and thus [appellant] transacted business in the District." *Id.*

In contrast, the contact made by Kalil to Mr. Ryan of Allbritton consisted solely of a single voicemail message that, incidentally, was never returned. Fritz Aff.; Def's Reply at 8. This single voicemail is a far cry from the "extensive advertising activity ... deliberately solicit[ing] District residents" that was present in *Shoppers Food Warehouse*. In addition, this contact was made well after this suit was filed. *See* Fritz Aff. This Court can find personal jurisdiction based only on the acts that had occurred at the time the Complaint was filed, not those acts occurring after Plaintiff filed her Complaint. *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300-01 (D.C.Cir.1996) (refusing to find personal jurisdiction based on an article appearing in the Washington Post *after* plaintiff had filed his complaint); *see also Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir.1991) (noting that personal jurisdiction is based on "defendant's contacts with the forum state at the time the lawsuit was filed"); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n. 1 (5th Cir.1990) (stating that the " relevant time for determining jurisdiction is the filing of the complaint"). Therefore, whether or not Kalil was transacting business when it left the voicemail for Mr. Ryan is not relevant to this Court's determination of whether Kalil was transacting business in the District at the time the Complaint was filed.

Each of Plaintiff's four bases for establishing Kalil transacted business in the District under § 13-423(a)(1) are without merit. As a result this Court finds that Kalil did not transact business in the District of Columbia, and consequently refuses to exercise personal jurisdiction over Defendant Kalil.

### C. Constitutional Due Process

[7] The final prong of the analysis this Court must address in determining whether it has personal jurisdiction over Kalil is whether exercising jurisdiction over Kalil will comport with due process. While this Court has already determined that Plaintiff's claim did not arise from Kalil's contacts with the District and that Kalil has not transacted business in the District, Plaintiff's arguments that an exercise of personal jurisdiction over Kalil would comport with due process analysis will be addressed.

*14 [8] As noted above, the transacting business clause of the District of Columbia long-arm statute has generally been interpreted broadly and is considered to be "co-extensive with the Constitutions due process limits." *First Chi. Int'l*, 836 F.2d at 1377. "The constitutional touchstone of the due process determination is 'whether the defendant purposefully established minimum contacts in the forum state.' " *COMSAT*, 900 F.Supp. at 520 (quoting *Asahi Metal Indust. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 108-09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987)). The due process analysis consists of three parts: the defendant must (1) " purposefully avail [ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) and (2) " reasonably anticipate being haled into court" in the forum state, *World-Wide Volkswagen Corp. v. Wooden*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); finally (3) the "suit [cannot] offend traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158. In addition, the "minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state.*" *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis in original). Each of these three aspects of the minimum contacts test will be dealt with below.

*1. Purposeful Availment and Foreseeability of Suit in the District*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---- Page 15
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Plaintiff states in her Opposition that "[t]here can be no question but that Kalil 'purposefully availed' itself of the privileges of conducting business in the District." Pl.'s Opp'n at 17. The only support for this conclusory statement is that Kalil contacted Mr. Herwitz of Fox Television on November, 25, 2003, Pl.'s Opp'n at 17; *Id.*, Ex. 2 at 6 (Apr. 16, 2004 Update), and that Kalil directed correspondence to Mr. Wood in the District. *Id.* at 17. By virtue of these contacts, Plaintiff contends that Kalil "should have 'reasonably foreseen' the possibility of its being haled into court" in the District. *Id.*

Kalil indicates that the sole purpose of the contact with Mr. Herwitz was "to gauge the general interest of Fox in obtaining additional properties and was not in furtherance of the sale of the Station." Def's Reply at 13. However, given that this is a motion to dismiss, all factual disputes must be resolved in favor of the plaintiff. *Crane*, 894 F.2d at 456. Therefore, this Court will accept Plaintiff's allegation that the contact with Fox was in furtherance of the Brokerage Agreement and constituted performance in the District. Accepting Plaintiff's statement that the contact was made in furtherance of the Brokerage Agreement, however, does not relieve the Plaintiff of her duty to prove the elements of personal jurisdiction with non-conclusory factual statements. *See First Chi. Int'l*, 836 F.2d at 1378. Merely stating that "Kalil 'purposefully availed' itself" does not make it true.

*15 Kalil also takes issue with Plaintiff's assertion that correspondence with Mr. Wood regarding payment of Kalil constitutes purposeful availment and reasonable foreseeablity on the part of Kalil. As the court stated in *Cellutech*, long-distance negotiations between a non-resident defendant and the non-resident plaintiff's lawyer, who happens to be located in the District, is "not [a] significant enough contact[ ] to have caused defendant [ ] reasonably to anticipate being haled into court." *Cellutech*, 871 F.Supp. at 50. In addition, "[i]t is mere fortuity, over which defendant[ ] had no control and from which defendant[ ] could derive no expectation of consequences, that plaintiff chose Washington counsel to conduct these negotiation." *Id.* at 49-50. That BCI retained Mr. Wood, a District attorney, to conduct the negotiations and finalization of the Purchase Agreement, and thus was the logical person to which Kalil directed its initial inquiry into payment, was beyond the control of Kalil. The transmittal of the invoice was in response to Mr. Wood's indication that he had no invoice from Kalil on which to make a determination of how much Kalil was owed. Wood Decl. I ¶ 12. As noted above, if a single responsive mailing cannot form the basis of a finding of "transacting business," *Ferrara*, 54 F.3d at 831, then it can be inferred that a single responsive mailing would not constitute Kalil purposefully availing itself of the laws of the District where it would then reasonably foresee being haled into court.

### 2. Fair Play and Substantial Justice

[9] In determining whether the notions of fair play and substantial justice would be furthered by a finding of personal jurisdiction, this Court must consider the burden to Kalil in defending the suit in this jurisdiction; this jurisdictions interest in adjudicating the dispute; Plaintiff's "interest in obtaining convenient and effective relief; ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted).

Plaintiff asserts that the burden to Kalil is light, as at the time Plaintiff filed suit Kalil's attorney, Tim Ryan, was a member of a law firm with offices in the District and because Kalil has subsequently "retained specific District of Columbia counsel." Pl.'s Opp'n at 18. As Kalil states, however, Kalil's retainer of counsel in the District does not bear on how light the burden to Kalil is, but how heavy. Kalil contends that the improper filing of this suit in this Court forced Kalil to hire District counsel in order to defend itself. It is a burden Kalil had to bear as a result of this forum choice, not one that diminishes the burden to Kalil. Def's Reply at 16. Furthermore, the documents, records, and witnesses Kalil would rely upon in defending itself are all located in Arizona. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----    Page 16
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

*16 Plaintiff also claims that "the central event in the case, ... the closing of the sale of BCI, took place in the District of Columbia," thus resulting in this jurisdiction having an inherent interest in the adjudication of the case. Pl.'s Opp'n at 18. However, where the parties are both non-residents, the District's "legitimate interests in the dispute have considerably diminished." *Formica v. Cascade Candle Co.*, 125 F.Supp.2d 552, 556 (D.D.C.2001) (quoting *Asahi*, 480 U.S. at 114, 107 S.Ct. at 1033). While Plaintiff asserts that the central event of the case, the closing of the Purchase Agreement, occurred in the District, Kalil was not a party to the Purchase Agreement, nor was it present or invited to the closing. Def's Reply at 16; Wood Decl. I ¶ 14; Def.'s Mem., Ex. 2 (Purchase Agreement). For this Court to assert personal jurisdiction over Kalil based on the closing of a sale to which it was neither a party nor present at, would hinder, not further, the notions of fair play and substantial justice.

Plaintiff's final claim is that this Court is the only court "capable of exercising jurisdiction over all the parties and potential parties." Pl.'s Opp'n at 18. Thus, presumably, "the interstate judicial system's interest in obtaining the most efficient resolution" would be satisfied. By including the term "potential parties" Plaintiff is referring to Trinity, a California corporation, and SunTrust Bank, a District bank in which money from the sale of BCI is escrowed. Pl.'s Opp'n at 18, 19. The dispute, however, arises from the Brokerage Agreement, to which only BCI, Plaintiff, and Kalil were parties. Frank Kalil Aff., Ex. A (Brokerage Agreement). That another court may not have jurisdiction over SunTrust or Trinity, non-parties in this suit, is not a concern of this Court at this juncture. [FN6] Instead, given the above-mentioned facts, the Court finds that it would not comport with due process for it to allow Plaintiff's suit against Kalil to progress in the District of Columbia.

## IV: CONCLUSION

For the reasons set forth above, Defendant Kalil's Motion to Dismiss for lack of personal jurisdiction is granted.

FN1. Unlike motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6), when resolving motions brought pursuant to Federal Rule of Civil Procedure 12(b)(2) courts are generally permitted to look outside the pleadings. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) (stating that when there is a motion to dismiss based on the district court's jurisdiction, " the court may inquire by affidavits or otherwise, into the facts as they exist"), *rev'd on other grounds, Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *see also Helmer v. Doletskaya*, 290 F.Supp.2d 61, 65 n. 1 (D.D.C.2003) (considering the parties affidavits as relevant to the issue of the court's jurisdiction), *rev'd on other grounds, Helmer v. Doletskaya*, 393 F.3d 201 (D.C.Cir.2004). This Court will therefore examine the exhibits attached to the parties' pleadings that provide additional relevant facts.

FN2. This action was dismissed by the United States District Court for the District of Arizona on September 7, 2005 for lack of subject matter jurisdiction. *See* Pl.'s Notice of Judicial Action, Ex. 1 (September 7, 2005 Dismissal Order).

FN3. The Court notes that perhaps the United States District Court for the Eastern District of Pennsylvania is a more amenable jurisdiction for suit, given the inability of the parties to maintain jurisdiction either in the District of Columbia or the District of Arizona.

FN4. The Amended Complaint merely states that "Kalil regularly transacts business in the District of Columbia." Am. Compl. ¶ 2. Kalil is first to mention the long-arm statute in its Memorandum, also noting that jurisdiction could potentially be conferred under the statute pertaining to service of foreign corporations, D.C.Code §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


--- F.Supp.2d ----                                                                      Page 17
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

      13-334 (2001). Def.'s Mem. at 7. Plaintiff acknowledges in her Opposition that this Court should exercise personal jurisdiction over Kalil based on § 13-423(a)(1) (2001). Pl.'s Opp'n at 12.

      FN5. Both will be examined below, along with the contact made to Fox, to determine whether in fact they do qualify as " transacting any business" in the District. *See infra* Sections III.B.2, III.B.3.

      FN6. The Court notes that Plaintiff's assertion that this is the single court capable of exercising jurisdiction appears flawed, given the large number of contacts between the parties and the Eastern District of Pennsylvania.

D.D.C.,2005.
Brunson v. Kalil & Co., Inc.
--- F.Supp.2d ----, 2005 WL 3211733 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2096015 (Trial Motion, Memorandum and Affidavit) Defendant, Kalil & Company, Inc.'s Sur-Sureply (Jul. 11, 2005)
• 2004 WL 2877817 (Trial Pleading) First Amended Complaint (Nov. 04, 2004)
• 1:04cv01828 (Docket) (Oct. 21, 2004)
• 2004 WL 2877806 (Trial Pleading) Complaint (Oct. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.